**Don S. STURGILL, Individually and as Acting Commissioner of Public Safety, Appellant,**

**v.**

**John Wesley BEARD, Appellee.**

Court of Appeals of Kentucky.

June 21, 1957.

Dissenting Opinion July 8, 1957.

———◆———

E. Gaines Davis, Jr., Smith, Reed & Leary, Frankfort, for appellant.

Robert Hatton, Morris E. Britt, Louisville, for appellee.

Stanley B. Mayer, Louisville, amicus curiae.

WADDILL, Commissioner.

The appeal is from a judgment invalidating certain regulations the Department of Public Safety adopted on December 20, 1956, establishing a "Point System" under which the Department suspended the motor vehicle operator's license of John Wesley Beard. The circuit court was of the opinion the Department had exceeded its statutory authority in promulgating the regulations, and therefore held that the order issued by the Department suspending Beard's driver's license under those regulations was void. We reverse the judgment for the reasons hereinafter assigned.

The Department of Public Safety was created by KRS, Chapter 17, and all the functions of the Department of State Police were transferred to it under KRS 17.020 and 186.400, including the administration of the provisions of KRS 186.570. The latter statute in pertinent part provides:

"The department * * * may immediately suspend the license of any person, * * * operating a motor vehicle in this state, with or without hearing, and with or without receiving a record of conviction of that person of a crime, whenever the department has reason to believe that: * * * (d) That person is an habitually reckless or negligent driver of a motor vehicle or has committed a serious violation of the motor vehicle laws. * * *."

Pursuant to the provisions of KRS 186.400, the Department adopted three regulations designated as PSfty–DI–I, 2, and 3, establishing a "Point System," which, to explain briefly, automatically fixes penalty points following conviction of moving traffic violations, and provides for the mandatory suspension of the driver's license of a person who has accumulated twelve points within a three year period.

It is apparent to us that the Department, in adopting the "regulations," acted within the scope of the power delegated to it under KRS 186.570, because the regulations neither enlarge nor restrict the application of the terms of the statute, but merely declare an administrative policy within the express terms of the Act. In short, the "Point System" provides a fair and workable method of effectuating the provisions of KRS 186.570.

It is urged that the regulations violate the Fourteenth Amendment to our Federal Constitution because they authorize the Department to summarily deprive the licensee of a "vested property right" in his driver's license without "due process of law." This argument is fallacious in that it erroneously assumes a licensee has a vested property right in his operator's license.

It is now too late to contend that a citizen of this Commonwealth is born with a natural and irrevocable "right" to operate a motor vehicle on our public roads, because it is now a privilege granted by a license of the state, subject to reasonable regulations by the state in the exercise of its police powers. Ballow v. Reeves, Ky., 238 S.W.2d 141; Withers v. Marshall, 311 Ky. 659, 225 S.W.2d 121; Commonwealth

v. Harris, 278 Ky. 218, 128 S.W.2d 579; 33 Am.Jur., Licenses, Section 65; 5 Am. Jur., Automobiles, Section 151. Hence, when the conditions imposed by the license are violated by the licensee, the suspension of the privilege to operate a vehicle is not a denial of "due process of law." Ballow v. Reeves, Ky., 238 S.W.2d 141; Ratliff v. Lampton, Cal.App., 187 P.2d 421; Goodwin v. Superior Court of Yavapai County, 68 Ariz. 108, 201 P.2d 124; Heart v. Fletcher, 184 Misc. 659, 53 N.Y.S.2d 369; Doyle v. Kahl, 242 Iowa 153, 46 N.W.2d 52; Hadden v. Aitken, 156 Neb. 215, 55 N.W.2d 620, 35 A.L.R.2d 1003.

Although we believe the reasons given adequately dispose of the contention made concerning lack of "due process," other sufficient reasons appear which dispel any lurking fear that a licensee may be denied his constitutional right of "due process of law" by the Department's application of the regulations. These safeguards are: (1) Under the regulations, no driver's license can be suspended by the Department except upon "twelve penalty points" assessed against the licensee for convictions of named moving traffic violations; and, (2) KRS 186.580, which provides for an appeal to the quarterly court from an order of the Department issued pursuant to KRS 186.570. Since the validity of the "Point System" rests upon KRS 186.570, an order issued by the Department suspending a driver's license under the "Point System" is likewise appealable.

■ Further attack is made upon the "regulations" on the theory that KRS 186.-570 is unconstitutional in that legislative functions have been delegated to an administrative body without providing any criteria or standards in the legislative act. The circuit judge expressed his view of the "Point System" in this language:

"The court * * * is of the opinion that the regulation imposed by the defendant [Department] for the purpose of revoking a driver's license in Kentucky was solely a legislative function, and being so, could not be delegated to an administrative department, * *, by the General Assembly of Kentucky."

We disagree. We think the "Point System" is constitutionally sound, and the contention to the contrary is wholly without substance, and must be rejected because we believe the administration of the traffic rules can lawfully be delegated to administrative officials. Our conclusion appears to be in accord with the decision reached by this Court in State Racing Commission v. Latonia Agricultural Association, 136 Ky. 173, 123 S.W. 681, 683, 25 L.R.A.,N.S., 905, wherein the contention was made that the legislature could not constitutionally delegate to the Racing Commission the power to prescribe rules, regulations, and conditions under which running races would be conducted in this State. In the course of the opinion the court struck down the objections raised, and said:

"* * * Given that the subject is one for the legitimate exercise of the state's police power, then the means adopted by the Legislature, so long as it has an ascertainable relevancy to the object, is clearly within the scope of that power. Whether the end justifies the means is exclusively for the legislative discretion. Whether the means bear a pertinent and reasonable relation to the end may be looked into by the courts so far only as to determine the fact of pertinency and reasonableness. Only when the means adopted are manifestly unreasonable and oppressive, or bear no logical relation to the object of the legislation, are the courts at liberty to declare the act unconstitutional. * * * In all cases the Legislature selects the subject, and indicates the public policy with respect thereto. The subject is thereby brought within governmental control. Its free indulgence is deemed harmful. To so determine is the exclusive prerogative of legislation. The selection of the persons, places, and times, and the regulation of the conditions upon which it

is to be exercised, are matters of executive detail, which may be, and which are always, delegated to the ministerial body. * * * ."

Later, in Craig v. O'Rear, 199 Ky. 553, 251 S.W. 828, 831, this Court again considered the question of whether the legislature may confer discretion upon certain boards and commissions to execute its laws, and therein the court resolved the query in this language:

"It is next insisted that the act is void as a delegation of the functions of the Legislature. It must not be overlooked that Legislatures are not continuous bodies. As a rule, they are in session for only a few days each year, or every two years, as is the case in Kentucky. Of necessity such bodies cannot undertake to determine all facts incident to the administration of the laws which they enact. Therefore when we say that the Legislature may not delegate its powers, we mean that it may not delegate the exercise of its discretion as to what the law shall be, but not that it may not confer discretion in the administration of the law itself. In re Chapman, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154. The books are full of cases upholding the power of the Legislature to confer on boards, bureaus, and commissions the power to carry out the legislative will. * * * ."

■ It is further asserted that the regulations are invalid insofar as they attempt to provide for "mandatory suspension" of licenses when licensees accumulate twelve "penalty points" for moving traffic violations under the "Point System." This view is predicated upon the language appearing in KRS 186.570 which provides that:

"The department * * * may * * immediately suspend the license of any person * * * ."

It is urged that the word "may," limits the Department to issue "discretionary suspensions."

The word "may" as used in KRS 186.570, does not restrict the Department from promulgating reasonable regulations giving advance notice of standards which will govern its determination of when a licensee is "habitually reckless." The discretion given by the statute was exercised by the adoption of the "Point System." Discretion is further exercised by the Department when it is determined that an order shall issue suspending a license. We find no merit in the contention made.

■ Appellee Beard claims that the "regulations" have been retrospectively applied by the Department in suspending his driver's license. The basis of his claim is that neither speeding, running red lights nor reckless driving were grounds for the suspension of his license when he was convicted of those offenses in 1954, 1955, and 1956, and therefore, the Department wrongfully considered those prior convictions in ordering the suspension of his license.

Beard's claim evaporates when the provisions of KRS 186.570 are applied to his case. This statute, enacted in 1936, authorized the Department to summarily suspend the license of any pesron whenever the Department had "reason to believe" the person in question "is an habitually reckless or negligent driver of a motor vehicle or has committed a serious violation of the motor vehicle laws." Beard's license was suspended under the statute upon a determination by the Department that he was "an habitually reckless driver." The mere fact that the Department utilized the "Point System" in making this determination did not make the application of the regulation retroactive as to the appellee. Beard's argument that the "regulations" are "ex post facto law" merits no further discussion. See: May v. Moore, Ky., 249 S.W.2d 518; Commonwealth v. Harris, 278 Ky. 218, 128 S.W.2d 579; Armstrong v. Commonwealth, 177 Ky. 690, 198 S.W. 24; Eastern Kentucky Coal Lands Corp. v. Commonwealth, 127 Ky. 667, 106 S.W. 260, 108 S.W. 1138; Kentucky Union Co. v. Commonwealth, 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137; Fisher

v. Cockerell, 5 T.B.Mon. 129, 21 Ky. 129; Fisher v. Cockerell, 5 Pet. 248, 30 U.S. 248, 8 L.Ed. 114: Also see, Graham v. State of West Virginia, 70 W.Va. 793, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917; 11 Am.Jur., Const. Law, Section 351.

We have concluded that the adoption of the "regulations" by the Department is a valid exercise of discretionary administrative power constitutionally delegated to the Department by the General Assembly.

Wherefore, the judgment is reversed, with directions to enter a judgment validating the "regulations" creating a "Point System" within the Department of Public Safety and sustaining the Department's order suspending appellee Beard's motor vehicle operator's license.

SIMS and BIRD, JJ., dissent.

SIMS, Judge (dissenting).

I find myself unable to agree with the majority opinion and will express my reasons therefor in this dissent.

It is provided in KRS 186.570 that the Department of Revenue (acting through the Department of Public Safety under KRS Chapter 17) may suspend the license of any operator of a motor vehicle "whenever the department has reason to believe * * *, with or without hearing, * * * that the person is an habitually reckless or negligent driver * * * or has committed a serious violation of the motor vehicle laws."

At once it is apparent no yardstick is laid down to give the Department, which of necessity must act through its Director, a guide in determining when he has reason to believe a person is habitually reckless or has committed a serious traffic violation. This statute does not require a conviction before a license may be suspended as does KRS 186.560, but puts the power solely in the discretion of the Director to suspend an operator's license "whenever the department has reason to believe [there has been] a serious violation." Hence KRS 186.570

arbitrarily places in the Department, or its Director, the power to act without any restraint—capriciously, should he so desire—and there is no appeal from his ruling. The appeal provided in KRS 186.580 does not apply because the Director in his "point system," hereinafter referred to, makes the suspension mandatory, and this section expressly excepts appeals where suspension is mandatory.

No provision is made in KRS 186.570 for a conviction in court of an operator before "points" may be assessed against him by the Director. But the Director's order, directive, proclamation, or whatever term he applies to "PSfty–DI–2" says "points will be assessed for convictions of traffic violations" and he arbitrarily sets out therein the number of "points" he determines should be assessed for a conviction of each violation. Suppose the next Director is not so kindly disposed and decides that he has "reason to believe that an operator is habitually negligent" without a conviction, what is to prevent him from abolishing a conviction as a condition precedent for his "reason to believe" the operator is habitually negligent? Or could the present Director through a change of heart abolish the necessity of a conviction before assessing "points"? Evidently he could because his proclamation "PSfty–DI–1" reads: "To assist the Department of Public Safety in making a determination that a person is an habitually reckless or negligent driver * * * penalty points established by administrative regulations shall govern." If the "points shall govern to assist the Director," it would logically follow he could suspend a license "whenever he has reason to believe, with or without a hearing," a person is a reckless or negligent driver regardless of "points" or convictions. It has been written that our government is one of laws and not of men. Manifestly the Director's "point system" is government by him alone, unsupported by any statute and is contrary to the State Constitution.

Nor does KRS 186.570 provide the length of time the suspension is to last but leaves

that to the discretion of the Director, who under his "point system" could inflict a suspension for any length of time he desires, whether for one month, one year or forever.

If there was ever a statute which violates § 2 of our Constitution, prohibiting arbitrary and absolute power over the lives, liberty and property of freemen, it is KRS 186.570.

The present Director of Public Safety has inaugurated what is known as a "point system," wherein he arbitrarily lists the number of points he thinks a violation of various traffic regulations should carry and his system provides that where twelve such points accumulate against an operator within a three year period, the operator's license shall be suspended for six months. Thus, the Director in effect is legislating since KRS 186.570 says nothing about a conviction for traffic violations; nor does it mention any number of "points" against the operator such convictions may carry. All that is required under KRS 186.570 to suspend an operator's license is for the Department (now the Director of Public Safety) to reasonably believe that a driver of a motor vehicle is habitually reckless or has committed a serious violation of traffic laws. Nothing is mentioned in KRS 186.570 about twelve "points" accumulated within a three year period shall cause a license to be suspended for six months, or for any length of time. May it be asked on what basis is the number of points assessed for each violation? On what basis is the three year period arrived at, and what three years? Can the Director make the three year period retroactive to 1936, the date KRS 186.570 was enacted? Can the Department or the Director increase or decrease these "points" for certain violations as his discretion may dictate? And how did the Department or Director happen to determine that twelve "points" are sufficient to suspend an operator's license? Had he so desired could he have said six points, nine points or twenty points would work a suspension? Could the license be suspended if the Department or the Director "had reason to believe"

that the operator habitually was reckless, although no charge had been filed against the operator nor had he been convicted? Under the majority opinion this last question must be answered in the affirmative as KRS 186.570 vests absolute power of suspension in the Director. Thus this section of the statute attempts to confer discretion on the Director and under the Craig case (Craig v. O'Rear), 199 Ky. 553, 251 S.W. 828 and the Latonia case, (State Racing Comm. v. Latonia Agricultural Ass'n), 136 Ky. 173, 123 S.W. 681, 25 L.R.A.,N.S., 905, this it cannot do.

A careful reading of KRS 186.570 shows it does not give the Department or its Director the right or authority to establish a "point system." But admitting arguendo such authority is conferred on the Department or its Director by this statute, then it does not take one skilled in constitutional law to determine it runs afoul of § 2 of our Constitution, forbidding the General Assembly to place absolute and arbitrary power over the rights and privileges of freemen in one department or in one man. And §§ 27 and 28 of our Constitution forbids a delegation of legislative power.

To my mind, the Department and the Director were legislating when it or he established the "point system." But if one should conclude that the authority assumed in establishing the "point system" was exercised under KRS 186.570, then it was without sanction in law because this statute is unconstitutional in that it attempts to delegate legislative functions to an administrative body contrary to §§ 27 and 28, as mentioned in the preceding paragraph.

Much is said in briefs about the use of our public roads by an operator of a motor vehicle as being a privilege and not a right and the State may control this privilege by reasonable regulations. Admittedly this is the law in this jurisdiction. But I say let the State control the privilege through the General Assembly by constitutional legislation rather than have a Department or its Director assume such authority or to act

under an unconstitutional statute vesting arbitrary and absolute power in one man. Let me call attention to the fact that a license to operate a motor vehicle is a very valuable privilege—one which borders on a property right. Many of our citizens invest thousands of dollars in motor vehicles and earn their livelihood by operating them upon the highways, for which they pay a large tax. Such privilege, which borders so closely upon a property right, is so valuable that no one person or department of government should have the arbitrary power to suspend it, under the guise of making the highways safe, whenever that department has reason to believe, with or without a hearing, that a person is an habitually reckless driver or has committed a serious violation of the motor vehicle laws. Wignall v. Fletcher, 303 N.Y. 435, 103 N.E.2d 728. When KRS 186.570 attempts to place such arbitrary power in the Department or its Director, it violates § 2 of our Constitution.

The Director is given no authority under KRS 186.400 to establish a "point system." The applicable part of this statute reads: "The administration of the provisions of KRS 186.400 to 186.640 not specifically vested in the Department of Revenue or the circuit clerks shall be vested in the Department of Public Safety. The Department of Public Safety may prescribe regulations for the enforcement of KRS 186.400 to 186.640 * * *." The last sentence just quoted does not empower the Director to say what the law shall be, as he is attempting to do, but it merely confers upon him the administration of the law itself. This very point was decided in the Craig case, 199 Ky. 553, 251 S.W. 828, 831, where this language was used: "The books are full of cases upholding the power of the Legislature to confer on boards, bureaus, and commissions the power to carry out the legislative will."

In the case before us, the Director instead of carrying out the legislative will is in effect and in form legislating on his own accord in inaugurating his "point system," a thing the Legislature never had in mind when it enacted the various sections in KRS Chapter 186. Nor is a "point system," or anything akin to it, mentioned or even suggested in any sections of Chapter 186. As was written In re Chapman, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154, the Legislature cannot delegate the exercise of its discretion as to what the law shall be, but it may delegate to a person or a department the administration of the law itself.

I have no quarrel with the "point system" and realize it is most important to strictly regulate motor traffic and to rid the highways of habitually reckless drivers or those who continuously and repeatedly violate traffic laws. But I say such authority is vested only in the Legislature and in enacting laws to this end, § 2 of our Constitution forbids it from placing arbitrary and absolute power in one department or in one man. It is to be hoped that the next General Assembly will enact its own "point system." Our form of government does not permit the Department of Public Safety or its Director to substitute its or his appraisal of the punishment to be inflicted for a violation of law. Such punishment can only be inflicted by the General Assembly. No matter how lofty and noble are the plans of the Director, they must be founded upon a constitutional basis, rather than upon his own whims or even his benign judgment or wise discretion.

I am authorized to say Judge BIRD joins in this dissent.