Johnnie Russell WASHBURN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 4, 1968.

Rehearing Denied Dec. 13, 1968.

Richard H. Lewis, Benton, for appellant.

Richard Peek, Commonwealth's Atty., Benton, John Breckinridge, Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

Johnnie Russell Washburn, charged with involuntary manslaughter, second degree, growing out of his involvement in a head-on automobile collision in which the driver of the other vehicle was killed, was found guilty and was given a jail sentence of one year and a fine of $1,000. He appeals, complaining of error in the admission in evidence of the results of an alcohol blood test, and in the denial of a continuance.

Over repeated and vehement objections of the defendant the court admitted in evidence the results of a test of a sample of the defendant's blood taken around one hour after the collision. It showed an alcohol content of .21, which under KRS 189.520 was presumptive of his being under the influence of intoxicating liquor.

If KRS 189.520, which relates to taking of alcohol blood-content tests for use as evidence in the prosecution of a person for operating a motor vehicle on a highway while under the influence of intoxicating liquor, is applicable to the taking of such a test for use in a prosecution, as here, for *manslaughter,* it is reasonably clear that *consent* of Washburn to the taking of the test was required. If KRS 189.-520 is *not* applicable, then under the precepts laid down in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, consent of Washburn to the taking of the test still was required to avoid the constitutional ban against unreasonable search and seizure, unless there was reasonable cause for belief by the officer taking the blood, before it was taken, that the defendant was intoxicated. The record in this case shows no basis for a belief by the officer that the defendant was intoxicated, other than that the officer, while with the defendant in the hospital emergency room where the defendant was being treated for two broken legs, a crushed knee, internal injuries, cuts and abrasions, "smelled a faint what I thought to be odor of alcohol on him. I couldn't tell, but it appeared to be alcohol." The officer observed no other indications of intoxication, and he frankly stated that he did not place the defendant under arrest at that time and his intention was to make his decision, whether or not to arrest, on the basis of the results of the blood test when received. It is our opinion that there was no sufficient cause here to warrant a taking of the blood test without consent, under the *Schmerber* rules relating to search and seizure.

So, whether or not KRS 189.520 should be considered applicable, the issue

in this case is the same; Did Washburn consent to the taking of the test?

The sheriff testified that he went to the hospital emergency room where Washburn was being attended by a doctor and several nurses, around one hour after the accident. He asked Washburn if he would consent to the taking of a sample of his blood for the purpose of testing it for alcohol content, and Washburn said "Yes," whereupon the doctor took the blood sample. The doctor testified that he took the sample but did not hear any conversation about consent— his mind was "engrossed in other things." He stated that although Washburn was in severe pain he was not in shock and he was lucid enough to give a competent consent. Washburn testified that he had no recollection of any of the events in the emergency room; he did not even recall seeing the doctor; and "as far as I know" was not requested to consent to the taking of a blood sample.

It is our opinion that the evidence warranted the finding that consent was given. The sheriff's positive testimony to that effect was not inherently incredible, nor was its probative value destroyed by the fact that the doctor did not hear the conversation, since the doctor's attention was on his efforts to treat Washburn's injuries. The fact that Washburn was in severe pain does not require the conclusion that the consent was not intelligently given, in view of the doctor's testimony that Washburn was lucid and was capable of giving a competent consent.

■ Washburn argues that the question of whether he consented to the blood test should have been submitted to the jury. However the record does not show that he at any time made such suggestion to the trial court. Not having raised any objection prior to the submission of the case to the jury, it was incumbent upon Washburn, in order to preserve the issue for appellate review, to raise it in a motion for new trial. Hartsock v. Commonwealth, Ky., 382 S.W.2d 861; Green v. Commonwealth, Ky., 413 S.W.2d 329. He did not even file a motion for new trial. The claimed error is not reviewable.

■ Washburn makes the further argument that in order for a consent to be valid the accused must previously have been informed of his right to refuse, and of his right to counsel. However, Schmerber rejects that argument and on that authority we do likewise.

Since we are holding that there was a sufficient showing of the giving of consent, it is unnecessary for us to consider Washburn's arguments that taking a blood test without consent violates the federal and state constitutional protections against self-incrimination and denial of due process. So we are not required in this case to cope with any problem that might arise from the fact that Schmerber rejected these arguments as relates to the federal constitution, whereas our court impliedly held in Hovious v. Riley, Ky., 403 S.W.2d 17, that taking a blood test without consent would violate the privilege against self-incrimination guaranteed by Section 11 of the Kentucky Constitution.

Of course we are aware of the "implied consent" law enacted in 1968 by the General Assembly, KRS 186.565, the application of which in cases arising after its effective date may involve considerations entirely different from those in the instant case.

The final point for our consideration relates to the matter of denial of a motion for a continuance. The indictment was returned in January 1967 but the case was continued generally on motion of the Commonwealth until finally, on January 11, 1968, a trial date of January 22, 1968, was fixed. Washburn had been represented by counsel in civil litigation arising out of the automobile collision but he had not employed an attorney to defend him in the criminal prosecution. On January 15 he did employ such an attorney and on January 19 the attorney moved for a continuance to the March 1968 term. That motion was overruled but the trial was reset for Janu-

ary 31, 1968. The trial proceeded on the latter date, despite the defendant's renewed motions for continuance to the March term.

■ We may accept Washburn's statement that he had been advised that he would not need counsel in the criminal case until the civil case was settled, and therefore he was justified in not sooner employing counsel in the criminal case, but we do not accept his argument that the two weeks from January 15 to January 31 was too short for adequate preparation. Similar periods have been held adequate. See Jones v. Commonwealth, 238 Ky. 453, 38 S.W.2d 251. It is our opinion that the trial court did not abuse its discretion in denying a further continuance. See Woods v. Commonwealth, 250 Ky. 822, 64 S.W.2d 155.

The judgment is affirmed.

All concur except PALMORE, J.