**COMMONWEALTH of Kentucky, DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Barry POWERS, a/d/a Barry Douglas Powers, Appellee.**

Court of Appeals of Kentucky.

Feb. 13, 1970.

As Modified on Denial of Rehearing April 24, 1970.

Mary Jo Arterberry, Dept. of Public Safety, Division of Driver Licensing, Frankfort, for appellant.

J. A. Gregory, Jr., Murray, for appellee.

CULLEN, Commissioner.

Barry Powers' motor vehicle operator's license was suspended for six months by the Department of Public Safety, under KRS 186.565, upon receipt by the department of a sworn report of police officer of the city of Murray, Kentucky, that he had arrested Powers for drunken driving, that he (the officer) had reasonable grounds to believe Powers had been driving a motor vehicle in this state while under the influence of intoxicating beverages, and that Powers had refused to submit to a chemical blood test upon the request of the officer. Powers requested a hearing before the Commissioner of Public Safety, under KRS 186.565(4). The request was granted and an evidentiary hearing was held, at which there was considerable evidence addressed to the question of whether Powers had "refused to submit to the test upon request of the officer," which is one of the issues the statute says is within the scope of such a hearing. The commissioner found as a fact that Powers had refused to take the test, and entered an order sustaining the suspension of Powers' license. Powers then appealed to the Calloway Circuit Court, under KRS 186.565(5), where the commissioner's ruling was reviewed, on the record of the hearing before him, as to whether his ruling was "supported by substantial evidence and whether his action * * * (was) arbitrary or capricious." The circuit court found that the ruling was arbitrary on three grounds, one of which was that the evidence at the hearing before the commissioner would not sustain the finding of the commissioner that Powers had been *requested* to take a blood test.

**262**

Accordingly, the court entered judgment setting aside the order of suspension of license. The Department of Public Safety has appealed.

Since that issue is dispositive of the case, we shall confine our consideration to the one issue of whether the evidence at the hearing before the commissioner was sufficient to sustain the finding of the commissioner that Powers had been *requested* to take a blood test, and had *refused*. We shall quote the significant testimony, with supplied emphasis.

The arresting officer testified that on the way from the place of arrest to the police station he "advised * * * (Powers) of his *right* to a blood alcohol test * * * I asked Mr. Powers if he would *like* a * * Blood Alcohol Test. * * * "On cross examination this officer's testimony was:

"38. Q. Did you put your language in the form of a demand that he take it?

A. No, sir.

39. Q. Did you tell him to submit to a blood alcohol test?

A. I *offered* him a blood alcohol test.

\* \* \* \* \* \*

47. Q. It says in the language of the statute, 'the law enforcing agency shall designate which of the aforementioned tests shall be administered, namely, a blood, breath, or urine or saliva test'. Did you designate that one of these was to be administered or did you merely ask him if he would like to take one?

A. I asked him about the blood alcohol test * * * if he would be *willing* to take a blood alcohol test and he told me 'No, sir.'

48. Q. Now, at this stage of the game, Mr. Knight, you are saying that you would be willing to take the test, * * * Now * * *

A. That is absolutely correct. That is my words. I asked him if he would be willing to take a test, and to me that is *offering* him a test.

49. Q. Now earlier, didn't you say that you stated, would you like a BA Test?

A. Right, but I also asked the subject on three different occasions, Mr. Overbey, the question.

50. Q. Would you like a BA Test?

A. On three occasions?

51. Q. Yes.

A. No, sir. I asked the subject would he be willing to take a blood alcohol test and he told me, 'No, sir.' "

A second officer said: "I told Mr. Powers that the law required him *if he so wanted* a blood alcohol test, that it was my duty to see that he got it *if he wanted it. He did not have to take it, it was his privilege.*" A third officer said, "I asked him if he would *like* to have a blood test."

It is our opinion that the word "request" in the statute, in context with the word "refuse," means such a form of request as specifically asks the subject person *to* take the test, not merely inquires whether the person would *like* to take it; one that has more of the elements of a *demand* than of a mere *offer*. We think the statute contemplates a direct solicitation, an expression of the officer's desire that the test be taken, in accordance with the dictionary meanings of "request" as connoting asking *for* something, soliciting, expressing a desire. See Webster's International Dictionary, Second Edition, Merriam-Webster. The normal form of the request would be: "Will you submit to the test?" The request should be so phrased as to call for a response which says "I will" or "I will not," rather than "Yes, thank you" or "No, thank you"—a re-

sponse which, if negative, is a *refusal* instead of a mere *declination*.

In the instant case the words used by the officers were calculated to convey to Powers the thought that to take the test was a *privilege* being *offered* him—a *right* conferred upon him by the law—an *opportunity* to receive a *benefit*—rather than a *waiver* of a *protection* on the *giving* of *evidence against* his interests. We agree with the circuit court that there was no "request" within the meaning of the statute.

We make no decision as to the validity of the other grounds relied upon by the circuit court for adjudging the commissioner's order to be arbitrary.

The judgment is affirmed.

All concur.