**COMMONWEALTH of Kentucky, DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Warren Filmore CHEEK, Appellee.**

Court of Appeals of Kentucky.

Feb. 20, 1970.

Mary Jo Arterberry, Department of Public Safety, Frankfort, for appellant.

Weldon Shouse, Lexington, for appellee.

WADDILL, Commissioner.

The question presented on this appeal is whether the Commissioner of Public Safety revoked appellee's driver's license in accordance with the provisions of KRS 186.-565. The revocation of the license was based on the Commissioner's finding that appellee had refused to submit to a blood test when he was requested to take such a test following his arrest for driving while intoxicated. On appeal, the Spencer Circuit Court found that there was not sufficient substantial evidence to support the Commissioner's finding and the order revoking appellee's driver's license was set aside.

Appellee was arrested by the town marshal of Taylorsville on June 30, 1968 for operating a motor vehicle while under the influence of intoxicating beverages. Appellee entered a plea of guilty to an amended charge of reckless driving. Later the town marshal filed an affidavit with the Department of Public Safety in which he stated that appellee had refused to submit to a blood test although affiant had placed him under arrest and had requested him to submit to the test.

Upon receipt of this affidavit the Department suspended appellee's driver's license for a period of six months. KRS 186.565(3). Appellee timely requested an administrative hearing and challenged the legality of the revocation of his license. The main issues raised at the administrative hearing were whether the town marshal had properly requested appellee to take a chemical test to determine the alcoholic content of his blood, and whether appellee had refused.

The town marshall testified in pertinent part as follows:

"* * * on the 30th of August I observed this 1967 or 1968, blue, pickup, truck coming down Kentucky highway 55 toward Taylorsville. Subject had a wagon in tow behind the vehicle. He was operating his vehicle on the left-hand side of the road, completely out of control. * * *. I advised him that he was under arrest, and I requested that he take the blood alcohol test. He said, 'No'. Then's when I put him in the back seat of the police car and proceeded to the county jail.

"MISS ARTERBERRY: [Counsel for the Department of Public Safety]. Did he give you any reason for refusing?

"OFFICER LESLIE: No mam.

"MISS ARTERBERRY: Do you believe he understood what you were asking him to do?

"OFFICER LESLIE: Well, it is a rather new law. I'm not sure whether, you know, most people understand it or

not. I didn't explain it to him, if that's what you mean.

"MISS ARTERBERRY: But he—do you believe he understood what a blood alcohol test was?

"OFFICER LESLIE: I believe—I don't think so.

"EXAMINER: Was he coherent enough that he would understand if he had knowledge of this? Was he—this is what—

"OFFICER LESLIE: I believe so sir.

"EXAMINER: He would have known if—

"OFFICER LESLIE: I believe he would sir. In my opinion, he was very highly intoxicated; but on different people, you know, you can't really tell.

"MISS ARTERBERRY: Is there a place available in Taylorsville where the test could have been administered?

"OFFICER LESLIE: Skaggs Clinic. Yes, mam, there are two doctors—Dr. William Skaggs and his father operate the thing.

"MISS ARTERBERRY: And did you —I—from my own thoughts, did you say that Mr. Cheek didn't give any reason for refusing?

"OFFICER LESLIE: No, mam. * * *."

Appellee claimed at the hearing that he had been willing to submit to the blood test and that the arresting officer had misunderstood his answer. We quote from some of his recorded testimony:

"* * *.

"ATTORNEY SHOUSE: [Attorney for appellee Cheek]. And did he [arresting officer] have any discussion with you whether or not you were willing to take a blood alcohol test?

"CHEEK: He said, 'You are supposed to take a blood alcohol test.' He said, 'Do you mind taking it?'

"ATTORNEY SHOUSE: What did you say to him?

"CHEEK: No.

"ATTORNEY SHOUSE: Alright, after—

"EXAMINER: You're answering— you say no that you don't want to take it or you don't mind taking it?

CHEEK: He asked me if I'd mind to take a blood test. He advised me that I was supposed to take a blood test, and he asked me if I'd mind to take one, and I said, 'No.'

"ATTORNEY SHOUSE: Alright, when you said no, did you mean that you consented to the taking of it?

"CHEEK: Yes. * * *."

The Commissioner chose to believe the testimony of the arresting officer and entered a finding that appellee had refused to submit to the blood test when requested to do so by the arresting officer. Under KRS 186.565(5) the finding and decision of the Commissioner become final unless on appeal to the circuit court it is determined that the Commissioner's ruling is arbitrary or capricious or is not supported by substantial evidence. Under this limited statutory review we are unwilling to hold that the Commissioner's finding is not supported by substantial evidence in view of the arresting officer's testimony. However, the question arises as to whether the arresting officer properly *requested* appellee to submit to a blood test. In Commonwealth, Department of Public Safety v. Powers, Ky., 453 S.W.2d 260, (rendered February 13, 1970), we defined the word "request" as used in KRS 186.565(3) to mean:

"* * * a form of request as specifically asks the subject person *to* take the test, *not* merely inquires whether the person would *like* to take it; one that has more of the elements of a *demand* than of a mere *offer*. We think the statute contemplates a direct solicitation, an expression of the officer's desire that

the test be taken, in accordance with the dictionary meanings of 'request' as connoting asking *for* something; soliciting, expressing a desire. \* \* \*."

We have concluded that the arresting officer's testimony sufficiently shows that he made a proper request of appellee to submit to the blood test. Appellee's testimony strongly indicates that he understood what the arresting officer had asked of him because his sole defense was that he had agreed to take the blood test. (KRS 186.565(4) among other things, provides:

"\* \* \*. Whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to the test shall *not* be an issue. \* \* \*.")

Consequently, the findings and decision of the Commissioner must be upheld because "his action is neither arbitrary nor capricious."

The judgment is reversed with directions to enter a new judgment upholding the order of the Department of Public Safety revoking appellee's driver's license.

All concur.