**Wesley Thomas CRAIG, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, DEPARTMENT OF PUBLIC SAFETY, William O. Newman, Commissioner, Appellee.**

Court of Appeals of Kentucky.

Sept. 24, 1971.

Cabell D. Francis, Ben K. Wilmot, Stanford, for appellant.

John B. Breckinridge, Atty. Gen., Mary Jo Arterberry, Midway, for appellee.

STEINFELD, Judge.

Kentucky State Police Officers lifted appellant, Craig, out of a motor vehicle parked on a highway. He appeared to be

unconscious but he promptly revived. When the officers smelled the presence of alcoholic beverages and observed his demeanor they placed him under arrest, then according to appellant invited him to take the chemical test authorized by KRS 186.-565. By obtaining a license to operate a motor vehicle on the highways of this state Craig had impliedly consented to take this test but he declined.[1] On trial he was acquitted of the charge of operating a motor vehicle while under the influence of intoxicants.[2] Later, pursuant to statutory procedure he was notified that his license to operate a motor vehicle was being revoked for a period of six months. He sought to prevent the revocation before the Department of Public Safety but being unsuccessful he appealed to the circuit court which upheld the department. He appeals —we affirm.

■ Craig claims that the officers failed to make the type of request required by KRS 186.565(3) which in part reads: "If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency * * *" the agency shall revoke the license for the periods specified in the statute.

Officer Kenneth Keith testified:

"He was asked if he would like to have a blood-alcohol test and he declined, stating that he didn't want it himself, but to give it to his buddy. He was sick. And he was asked three different times, the best I remember, during the course of his arrest and on the way to the jail, if he would like to have a blood-alcohol test and it was also explained to him that if he refused the blood-alcohol test, that his license would be suspended."

Keith also said Craig "* * * was asked if he requested a blood-alcohol test * * *" and "* * * if he wanted the blood test * * *".

Officer James Gay said: "* * * I asked Mr. Craig again if he desired to take the B-A test * * *" and Gay warned Craig that he would lose his license if he did not take the test.

In Com., Dept. of Public Safety v. Powers, Ky., 453 S.W.2d 260 (1970), and Timberlake v. Com., Dept. of Public Safety, Ky., 464 S.W.2d 283 (1971), we held that the requests did not comply with KRS 186.565(3). We said in Timberlake "* * * that there was no positive, unequivocal 'request' within the meaning of the * * *" statute. That type of request is a prerequisite to subsequent revocation of a license. The Commonwealth argues that because the officers told Craig he would lose his license if he did not take the test this case is unlike Powers and Timberlake.

It should be noted Officer Keith testified that on three different occasions he asked Craig "if he would like to have a blood-alcohol test", however, both officers warned Craig that failure to take the test would result in his license being suspended. It therefore appears to us that the warnings distinguish this case from Powers and Timberlake and that here there was substantial compliance with KRS 186.565(3). Cf. Com., Dept. of Public Safety v. Cheek, Ky., 451 S.W.2d 394 (1970).

■ Craig demands that we declare KRS 186.565 to be unconstitutional as the procedures specified therein violate the due process and equal protection clauses of the United States and the Kentucky Constitutions.[3] That statute requires the of-

---

1. Blood tests for motorists may be statutorily provided for. Washburn v. Com., Ky., 433 S.W.2d 859 (1968). 44 states have such statutes. 59 Ky.Law Journal 537.

2. Acquittal has no bearing on the license suspension proceeding. See 60 C.J.S. Motor Vehicles, § 164.16, p. 855.

3. This statute is modeled after the Uniform Vehicle Code, section 6-205.1.

ficer to file with the Department of Public Safety an affidavit that he had reasonable grounds to believe that the arrested person had been operating a motor vehicle while under the influence of intoxicating beverages and that the request for the chemical test had been made and refused. The department then notifies the licensee that his license has been revoked for a period of not less than six months. The licensee is required within five days to surrender his license to the department or suffer severe penalties. He may within ten days after receiving the notice request a hearing before the department. KRS 186.-565(4). The commissioner must conduct a hearing within not more than twenty days and reach a decision within ten days of the completion of the hearing. The scope of the hearing covers the issues of whether the officer had reasonable grounds to believe that the licensee was the operator or in control of the vehicle while intoxicated, if he was arrested, if the officer requested the test and if it was refused.

Craig argues that inasmuch as the procedure does not require a due process hearing *before* the license is required to be surrendered the statute is unconstitutional. He cites Sniadach v. Family Finance Corporation of Bay View, 395 U.S. 337, 89 S. Ct. 1820, 23 L.Ed.2d 349 (1969),[4] which held invalid a procedure authorizing garnishment of an employee's wages. Next he cites Pack v. Dietz, Ky., 455 S.W.2d 575 (1970), and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[5] The latter two cases declared the right to a hearing prior to discontinuance of payment of welfare subsistence money. He also relies on Kentucky Alcoholic Beverage Control Board v. Jacobs, Ky., 269 S.W.2d 189 (1954), in which we ruled that a statute allowing the Kentucky Alcoholic Beverage Control Board to padlock licensed premises amounted to denial of due process. Several cases from foreign jurisdictions are cited but it would unreasonably lengthen this opinion to discuss them.

The department responds that the orderly and rapid procedure provided by the statute satisfies the requirements of due process. It demonstrates that the shortest time one can be deprived of his license prior to determination is six days and the longest time forty-two days. Of course, should the licensee be unsuccessful and exercise his right of appeal to the circuit court there may be substantial delays. It notes that in Sturgill v. Beard, Ky., 303 S. W.2d 908 (1957) [6] we said:

"It is now too late to contend that a citizen of this Commonwealth is born with a natural and irrevocable 'right' to operate a motor vehicle on our public roads, because it is now a privilege granted by a license of the state, subject to reasonable regulations by the state in the exercise of its police powers. (citing cases and texts). Hence, when the conditions imposed by the license are violated by the licensee, the suspension of the privilege to operate a vehicle is not a denial of 'due process of law'. (citing cases)."

These principles were reaffirmed in Commonwealth v. Mitchell, Ky., 355 S.W.2d 686 (1962).

The department argues that Craig had no "vested property right" in his driver's license. After this case was tried Bell v. Burson, Director, Georgia Department of Public Safety, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), in which the Georgia Motor Vehicle Safety Responsibility Act was tested, was decided. That act required

4. For a discussion of Sniadach v. Family Finance Corporation of Bay View re: procedure for the revocation of a license to drive a motor vehicle see Pollion v. Lewis, 320 F.Supp. 1343 (N.D.Ill.1970).

5. For a discussion of Goldberg v. Kelly re: procedure for the revocation of a license to drive a motor vehicle see Pollion v. Lewis, 320 F.Supp. 1343 (N.D.Ill.1970).

6. Sturgill v. Beard was overruled in part by Com., Dept. of Public Safety v. Thomas, Ky., 467 S.W.2d 335 (1971).

an uninsured motor vehicle operator to post security to cover the amount of claimed damages arising out of a motor vehicle accident or suffer suspension of his driver and vehicle licenses. The court said since the Georgia act deprived the motorist "* * * of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident", that "* * * due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." It declared that:

> "Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege'."

To the extent that our opinions in Sturgill v. Beard, supra, and Commonwealth v. Mitchell, supra, conflict with Bell v. Burson, supra, they are overruled, however, in all other respects they are reaffirmed.

Cases have upheld statutes requiring a motorist to impliedly consent to service of process through an agent. Williams v. Carter Bros. Co., Ky., 390 S.W.2d 873 (1965); Tankersley v. Gilkey, Ky., 414 S. W.2d 589 (1967); Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); and Carby v. Greco, D.C., 31 F. Supp. 251 (1940). Financial responsibility laws have been approved. Ballow v.

Reeves, Ky., 238 S.W.2d 141 (1951). The public can and must be protected against the improper use of a motor vehicle, therefore, the necessity of regulation of drivers becomes readily apparent. Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941).

KRS 186.565 affords a motorist procedure for rapid determination as to whether he has violated the conditions imposed by a statute designed to protect against the devastation being inflicted by intoxicated drivers. Kesler v. Department of Motor Vehicles, 1 Cal.3d 74, 81 Cal.Rptr. 348, 459 P.2d 900 (1969). The department and commissioner must comply strictly with the statutory procedure. 60 C.J.S. Motor Vehicles, § 131, p. 730; 88 A.L.R.2d 1077. Campbell v. Superior Court, 106 Ariz. 542, 479 P.2d 685 (1971), said that:

> "As previously noted, there is a high degree of probability that a motorist who refuses to submit to a reasonably reliable chemical test for determining intoxication is a dangerous driver; therefore, it is the opinion of this court that there exists a compelling public interest in the immediate removal of such persons from the highways of this state pending a hearing on the matter. 'The incidental hardship upon an individual motorist, in having his license suspended pending investigation and review, must be borne in deference to the greater public interest served by the statutory restriction.' Wall v. King, 206 F.2d 878, 883 (1st Cir. 1953)."

In Pollion v. Lewis, 320 F.Supp. 1343 (N.D.Ill.1970), it was said:

> "Regardless of the technical classification of drivers' licenses and vehicle registrations as 'privileges' under state law, these interests are subject to the protections of the Due Process Clause of the Fourteenth Amendment. Wall v. King, 206 F.2d 878, 882 (1st Cir. 1953), certiorari denied, 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411. Due process does not, however, require a prior adversary hear-

ing in all cases in which a significant private interest is jeopardized by government regulatory action. (Citing cases). The constitutionality of the particular statutory procedures must be determined after consideration of the interests at stake, both private and governmental, and the function and character of the evidentiary determinations which must be made."

It held that the Illinois statute which did not provide for a full adjudicatory hearing upon disputed facts prior to the effective date of the suspension did not contravene constitutional provisions.

In Brockway v. Tofany, 319 F.Supp. 811 (S.D.N.Y.1970), an action involving the question of whether due process required a hearing before the New York Commissioner of Motor Vehicles could extend the revocation of a driver's license beyond the mandatory period, it was said:

"In determining whether minimum procedural safeguards required by due process have been afforded to an applicant for a driver's license, we are guided by the oft-quoted principle proclaimed by the Supreme Court in Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), that due process does not demand 'inflexible procedures universally applicable to every imaginable situation,' but must be resolved after a balancing of the governmental function involved against the substance of the private interest affected. (citing cases)."

The complaint attacking the act was dismissed.

"The laws pertaining to the revocation of an operator's motor vehicle registration are not intended as a punishment to the operator but are designed solely for the protection of the public in the use of the highways." 60 C.J.S. Motor Vehicles § 127, p. 721. Our statute imposes no penal sanctions on those who refuse to be tested.

When a person licensed to drive "* * * abuses the privilege and acts in a manner which would lead the proper authorities to believe that his continued operation of a vehicle would constitute a menace to himself and others, then it seems altogether proper that this person's permission to drive should be temporarily suspended until a determination of his fitness can be ascertained." Robertson v. Tomson, 60 Misc.2d 275, 303 N.Y.S.2d 115 (1969).

Balancing the public interest with the entitlement of the individual to operate a motor vehicle and in light of the requirement for an accelerated determination of the claimed violation, we hold that the procedure provided in KRS 186.565 is a valid exercise of the police power. 60 C.J.S. Motor Vehicles, § 1649, p. 844. Cf. Spillman v. Beauchamp, Ky., 362 S.W.2d 33 (1962), and People ex. rel Albrecht v. Hartnett, 221 App.Div. 487, 224 N.Y.S. 97 (1927). 88 A.L.R.2d 1068 and Later Case Service.

The judgment is affirmed.

MILLIKEN, C. J., and EDWARD P. HILL, Jr., NEIKIRK, PALMORE and REED, JJ., concur.

OSBORNE, J., dissents.

OSBORNE, Judge.

I respectfully dissent from the majority opinion. It is my opinion that the statutory scheme which the legislature attempted to effect by the enactment of KRS 186.560 and 186.565 is in violation of sections 10 and 11 of the Constitution of this Commonwealth.

KRS 186.560 provides that the Department: "Shall forthwith revoke the license of any operator of a motor vehicle upon receiving record of his conviction of any of the following offenses." The offenses enumerated are manslaughter, driving while under the influence of intoxicating liquor, and other offenses more or less connected with the operation of an automobile.

KRS 186.565 provides that any person who operates a motor vehicle in this Commonwealth is deemed to have given his consent to a chemical test of his blood, breath, etc. The statute further provides the method of administering the test and subsection three provides: "If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency as provided in subsection (1) of this section, none shall be given, but the Department of Public Safety * * * shall revoke the license or permit of the person refusing to take the test for a period of not more than six months * * *."

In summary, the effect of the two above-quoted statutes is: 1. Provide for the revocation of the license of one convicted in court of driving while intoxicated. 2. Provide for a blood-alcohol test to be taken on the "implied" consent of the operator of a vehicle. If one does not give his consent then his license is revoked for a period of six months. It is the obvious intent and purpose of this statute to obtain evidence through means of the blood-alcohol test to be introduced at the trial of the accused if he is charged with any of the offenses under KRS 186.560, including driving while intoxicated.

It is patently clear under sections 10 and 11 of the Constitution that the results of such tests would not be admissible in evidence in a criminal prosecution unless the accused consented to the test. See Sullivan v. Brawner, 237 Ky. 730, 36 S.W.2d 364, and McManus v. Commonwealth, 264 Ky. 240, 94 S.W.2d 609, the latter case specifically holding that evidence obtained as the result of a physical examination is inadmissible unless acquired with the specific approval of the accused.

In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court of the United States had this question before it, viz., the rights of one required to take a blood-alcohol test as measured by the fourth and fifth amendments to the United States Constitution. In that case the court held the accused could be required to take the test as it did not violate the fifth amendment, since the fifth amendment only protected an accused from being compelled to *testify* against himself.[1]

Section 11 of the Constitution of this Commonwealth is broader than the fifth amendment in that it provides: "He cannot be compelled to give evidence against himself nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

As above pointed out, we have gone further in construing section 11 than the Supreme Court has in construing the fifth amendment in that we have held that this not only prohibits the compelling of matters of testimonial or communicative nature but also prohibits physical evidence concerning the body of the accused taken without his permission.

From the foregoing there appears to be no doubt but what the evidence obtained by virtue of the blood test is inadmissible in this jurisdiction not only in a criminal proceeding but a civil one as well. See Hovious v. Riley, Ky., 403 S.W.2d 17 (1966). The evidence which the blood test is designed to procure is inadmissible in evidence because it is obtained in violation of sections 10 and 11 of the Constitution of this Commonwealth, unless obtained by the consent of the accused. Therefore, the crux of this entire controversy rests in whether or not evidence obtained under duress, viz., a statute which would take one's privilege of driving an automobile away unless he consented to the test is evidence legally obtained. To me there can be but one answer to the proposition. Any attempt upon the part of the legislature to

---

1. The fifth amendment to the Constitution of the United States in this regard provides: "No person shall be * * * compelled in any criminal case to be a witness against himself."

compel a person to give up his constitutional rights in exchange for what has become a common privilege (the right to drive an automobile) is unlawful, arbitrary and unconstitutional. If the legislature be permitted what has been attempted here then it might well provide that any person who wishes to connect utilities to his home impliedly consents that the officers may search the home anytime day or night that they will without a warrant. It was never intended in the framework of our government that the citizen would have to trade the ordinary everyday commonly accepted privileges in exchange for retention of his constitutional rights. A citizen has a right to operate a motor vehicle provided he can meet the license requirements. Call it inherent, constitutional, personal or whatever you will, he cannot be required to give up his right against self-incrimination in exchange for it. To me this violates every known constitutional concept and principle.

I fully realize and appreciate that there are those who in this modern day and age may sincerely feel that the Commonwealth is justified in taking away the constitutional right of the citizen against self-incrimination in its earnest effort to apprehend and convict those who drive while under influence of intoxicants. In order to justify this legislative act one must hold this concept. I simply do not agree with it. I believe the right against self-incrimination is so inherent and so deeply imbedded in our constitutional concept of free government that to take it away under these circumstances is to make a grave mistake.

Appellant in his brief before this court does not specifically contend that the act is unconstitutional under sections 10 and 11, however, I believe his attack upon the act is broad enough to encompass all applicable sections of both the State and Federal Constitutions.

It is my further opinion that the statute in question is invalid because of its failure to provide for a meaningful hearing prior to the revocation of the license, therefore,

denying to the accused due process of law under both our Federal and State Constitutions.

The Supreme Court of the United States in Bell v. Burson, Director of the Georgia Department of Public Safety, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, decided May 24, 1971, in considering the constitutionality of state financial responsibility laws stated:

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that *adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a *'right'* or a *'privilege.'* Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L. Ed.2d 965." (Emphasis added).

In the case before us the appellant got no notice of hearing before the suspension letter of September 4, 1969, which contained a threat of fine and imprisonment and in fact the Department would not hold hearings until after appellant agreed to surrender his drivers license. In my judgment this in no way can be considered due process. I do not agree with the majority that a post-suspension hearing can in any way supply due process when a citizen's license has already been revoked. In this instance the appellant was found not guilty of driving while intoxicated by a court of competent jurisdiction. However, his license was nevertheless revoked, not because he was driving while intoxicated for this fact had been judicially determined,

but, because of refusal to submit his body for the extraction of blood which under the Constitution in our previous cases would not have been admissible in evidence at the judicial hearing unless freely and voluntarily consented to. I do not believe that administrative officers should be permitted to reverse or ignore judicial proceedings as was the case here.

In summary, I would point out that many rights not explicitly mentioned in the Constitution have been deemed to be so elementary to our way of life that they have been labeled basic rights. Such is the right to travel from state to state, United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239. Such, also, is the right to marry, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010. I would place among these rights the right to use the highways in an automobile and I would not require the citizen to give up the right against self-incrimination in order to enjoy it.

For the foregoing reasons, I respectfully dissent.