**Charlene CUMMINS, Appellant,**

v.

**Jerome LENTZ, Acting Commissioner, Department of Vehicle Regulation, Transportation Cabinet, Appellee.**

No. 90–CA–1368–S.

Court of Appeals of Kentucky.

June 7, 1991.

Rehearing Denied Aug. 30, 1991.

Christopher H. Hancock, Coffman & Beck, Bowling Green, for appellant.

Patricia K. Foley, Frankfort, for appellee.

Before LESTER, C.J., and CLAYTON and STUMBO, JJ.

LESTER, Chief Judge.

This is an appeal from an order affirming the decision of the Department of Vehicle Regulation, Transportation Cabinet, suspending appellant's operator's license for a period of six months.

In September 1988, Trooper Bradley Pratt of the Kentucky State Police was called to the scene of a single car accident on Highway 1083 in Warren County. Upon arrival the officer noted the overturned vehicle of Charlene Cummins who had extricated herself from the auto and had gone to a nearby house. Upon questioning, Cummins related that while she "was going on 1083" she encountered an oncoming vehicle which forced her off the road which caused her to overturn. During the conversation the trooper concluded that appellant had been drinking prior to the accident, so he requested her to walk a straight line which she was unable to do. This inability she assigned to being shaken and upset from the accident. Cummins was placed under arrest and requested to take a breathalyzer which she refused. The officer advised her that her refusal could cause the loss of her license but she again declined. A short time thereafter appellant

called a friend of hers who was with the Bowling Green Police Department who suggested that she take the test. Thereupon she changed her mind but the trooper, even though still in the vicinity, would not return and administer the test. The policeman then executed the customary affidavit which, in part, stated:

After the arrest, affiant requested the said Charlene C Cummins to submit to a chemical test as required by KRS 186.565 to determine the alcohol content of his blood. Upon refusal to submit to the designated test, affiant warned him of the effect of his refusal to submit to the test and he again refused to submit to the test.

Tpr. Bradley K. Pratt

Affiant

Subscribed and sworn to before me by Bradley K. Pratt, this the 21 day of September, 1988.

Betty Ralston

Notary Public

My Commission Expires: Notary Public, Kentucky State–At–Large

My Commission Expires July 29, 1992

Some ten months thereafter an administrative hearing was held which culminated in the order suspending appellant's license which was signed by appellee.

■ Cummins first argues that the officer did not have reasonable grounds to believe that she had been operating the vehicle while under the influence of intoxicants. Bearing in mind that no more than "reasonable grounds" are required, *Newman v. Smith,* Ky., 481 S.W.2d 679 (1972), we find it difficult to perceive how the trooper could have concluded otherwise when we have but one car with the individual in possession thereof saying while she "was going on 1083" an oncoming vehicle forced her off the road. As to the intoxicants, appellant seems to forget that law enforcement agents have been dealing with those under the influence driving cars long before the advent of mechanical or chemical devices and their observations based upon experience and/or training can certainly provide them with reasonable grounds. In addition, appellant could not

pass the easiest of field tests, and even though she took the position that this was due to the recent accident, the officer could just have readily concluded it was due to intoxication. The first argument must fail.

The second contention revolves around the choice of words Trooper Pratt used in his testimony. Appellant argues that in relation to the taking of the breathalyzer test that he said "he *believed* she refused." However, Pratt told the hearing examiner under oath:

And after that I placed her under arrest, and when we arrived at the jail she refused the breathalyzer. Then she was advised that her license could be suspended for six months and at that point she refused again.

Cummins' recollection of whether a warning had been given her concerning the effect of refusing the test was that she could not remember. We, as did the Court in *Commonwealth, Department of Public Safety v. Cheek,* Ky., 451 S.W.2d 394, 396 (1970), conclude that:

Under KRS 186.565(5) the finding and decision of the Commissioner become final unless on appeal to the circuit court it is determined that the Commissioner's ruling is arbitrary or capricious or is not supported by substantial evidence. Under this limited statutory review we are unwilling to hold that the Commissioner's finding is not supported by substantial evidence in view of the arresting officer's testimony.

We note that appellant avoids any reference to the officer's affidavit in her arguments to this Court.

■ The third contention revolves around appellant's change of heart about taking the test after twice refusing to do so. KRS 186.565(3) provides that the arrestee be asked to submit to the test and if after refusal and an explanation of the consequences that that person be asked again. The evidence shows that Trooper Pratt followed the statute and gave Charlene Cummins two opportunities to say she would take the test. She expressed two refusals. When she agreed to take the test she was already placed in the hands of the

jailer. In actuality the statute has some flexibility built into it. It allows the arrestee to change his or her mind after being informed of the consequences. We see no need or any leeway which would allow anymore flexibility and permit an individual to change his mind after being given two chances to agree to submit. The statute provides that the request be made twice and the officer complied. Driving a motor vehicle is a privilege. There has to be some line drawn in order for the efficient administration of justice. We would be overstepping our bounds to extend the provision involved herein.

■ As a fourth assignment of error Cummins urges that since appellee and not the Secretary of the Transportation Cabinet signed her suspension order, then it is void within the purview of KRS 186.565(4). It should be noted that we are not dealing with a criminal law which normally demands strict construction in favor of a defendant, *Boulder v. Commonwealth*, Ky., 610 S.W.2d 615 (1980); but rather a remedial statute in relation to which:

> It is a general rule of law that statutes which are remedial in nature are entitled to a liberal construction in favor of the remedy provided by law, or in favor of those entitled to the benefits of the statute. This is true of a curative statute having a remedial purpose, or statutes seeking the correction of recognized errors and abuses, remedying defects in earlier acts, or implying an intention to reform or extend existing rights. The rule also applies to statutes having for their design the simplification of procedure and the removal of technicalities in connection therewith. 73 Am.Jur.2d *Statutes*, § 267 (1974).

The remedy to be effected is to get the drunken driver off the road and as to how this is accomplished is merely procedural. When Cummins refused the test she had a due process hearing and we find it immaterial who signed the order of suspension as long as that individual did so in an official capacity.

Effective on the same date (July 13, 1984) as KRS 186.565 was KRS 174.015 which was an organizational Act dealing with the Transportation Cabinet and providing for various Commissioners who:

> ... shall perform such functions, powers and duties as provided by law and as the secretary shall prescribe and shall be directly responsible to the secretary.

Pursuant to the Secretary's official Orders Nos. 81021 and 90105 the Commissioner of the Department of Vehicle Regulation was designated to sign all orders required under KRS 186.565. Appellant merely says, by way of position statement, that the signature of the Acting Commissioner "does not meet the requirement of the statute." Lest there be any doubt pursuant to KRS 174.015, the requirements of KRS 186.-565(4) have been met.

The final contention reiterates the lack of substantial evidence to support the findings and conclusions. What we have already said will suffice in this regard. As to the fact that appellant was ultimately convicted of careless driving as opposed to driving under the influence is immaterial because the crux of this litigation is the refusal to undergo the breathalyzer test.

The judgment is affirmed.

CLAYTON, J., concurs.

STUMBO, J., dissents.

STUMBO, J., dissenting.

I must respectfully dissent. The majority determined that KRS 186.565(3) only permits a person to refuse to take a breathalyzer test twice; after the second refusal, one cannot change his mind and submit to the test. I find this ruling to be in direct opposition to the very purpose for which the legislature enacted KRS 186.565(3).

Drinking and driving is a serious problem facing every state in the nation. To confront this problem, many states have enacted statutes similar to Kentucky's "Implied Consent Law." The purpose in enacting such statutes is to preserve the best available evidence of one's blood alcohol content so that it may be used during the individual's trial for driving under the influence. The majority opinion mandates rigid compliance to the terms of KRS 186.-

565(3). I believe a more logical and fair interpretation is followed by our sister states. *Matter of Smith,* 770 P.2d 817 (Id.App.1989); *Larmer v. State,* 522 So.2d 941 (Fla.App.1988); *People v. Naseef,* 127 Ill.App.3d 70, 82 Ill.Dec. 204, 468 N.E.2d 466 (1984); *Gaunt v. Motor Vehicle Division,* 136 Ariz. 424, 666 P.2d 524 (Ariz.App. 1983).

The "flexible rule" followed by our sister states permits a subsequent consent to a breathalyzer test unless the delay would materially affect the test results. *Smith, supra.* The rationale behind this rule is that it is better to have a delayed test result than no result whatsoever. *Gaunt, supra.* Where neither party is prejudiced by the subsequent consent, a reasonable period to reconsider one's refusal should be allowed since the accuracy of the test itself does not demand the breathalyzer exam be performed immediately. *Lund v. Hjelle,* 224 N.W.2d 552 (N.D.1974).

Public policy in Kentucky would be better served by permitting the scientific evidence provided by state-approved tests to be used at trial, even if such tests were conducted following a second refusal by the charged party. However, the time within which one could change his mind should be limited to that which is reasonable under all the circumstances of a particular case. Here, the appellant changed her mind after only ten minutes. The arresting officer was still on the premises, and there was no evidence that the appellant did anything to compromise the results of a breathalyzer test.

While the language of KRS 186.565(3) permits two refusals by a person under arrest, I would recommend that this Court adopt the rule whereby a person can subsequently consent to the breathalyzer test within a reasonable time, if the results of such a test would not be materially affected by the delay. Such a rule protects the rights of the accused, provides the Commonwealth with the best available evidence of the party's blood alcohol content, and furthers the public policy behind the enactment of KRS 186.565(3). For these reasons, I must dissent.