228 F.2d 640
 97 U.S.App.D.C. 126
 Edith Neuman DE VEGVAR, Appellant,
v.
Whitney GILLILLAND, Pearl Carter Pace, and Henry J. Clay,
Constituting the Foreign Claims Settlement Commission of the
United States, and George M. Humphrey as Secretary of the
Treasury of the United States of America, Appellees.
 No. 12791.
 United States Court of Appeals District of Columbia Circuit.
 Submitted Nov. 19, 1955.
Decided Dec. 22, 1955.
Writ of Certiorari Denied March 26, 1956.
See 76 S.Ct. 543.
 
 Mr. Ernest Angell, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. Percy A. Shay, Washington, D.C., was on the brief, for appellant.
 Mr. Samuel D. Slade, Atty., Dept. of Justice, with whom Mr. Leo A. Rover, U.S. Atty., was on the brief, for appellee. Messrs. Edward H. Hickey and William P. Arnold, Attys., Dept. of Justice, and Lewis Carroll and Rufus E. Stetson, Jr., Assts. U.S. Attys., also entered appearances for appellee.
 Messrs. Philip Levy, Joseph W. Wyatt, Robert T. Reynolds, Washington, D.C., and Samuel A. McCain, New York City, filed a brief on behalf of Victor K. Anninger; Steven Ausnit; Walter Petschek; Socony Mobil Oil Company, Inc.; Karel Charles Stiassni; and Francis Price, Jr. and Dennis G. Karzag, Executors of the Estate of William Zimdin, as amici curiae, urging affirmance.
 Before EDGERTON, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 Mrs. de Vegvar brought suit in the District Court against the members of the Foreign Claims Settlement Commission, [97 U.S.App.D.C. 127] seeking to compel reconsideration of a decision of the Commission denying her claim to a share in the fund administered by that body known as the Yugoslav Claims Fund. The Secretary of the Treasury was also made a party defendant, and plaintiff asked that he be restrained from paying the amounts awarded to other claimants by the Commission, as this would so reduce the fund that her claim could not be paid.
 
 
 2
 The Yugoslav Claims Fund consists of moneys paid by Yugoslavia to the United States pursuant to an executive agreement,[1] this payment to be in full settlement and discharge of certain claims of our government against Yugoslavia and of all claims 'of nationals of the United States against the Government of Yugoslavia on account of the nationalization and other taking by Yugoslavia of property' between September 1, 1939, and the date of the agreement. The agreement provided that only persons who were nationals of the United States 'at the time of nationalization or other taking' by Yugoslavia were to be eligible to share in the Fund. It also provided that claims against the Fund were to be adjudicated by an agency to be established or designated by the United States Government, and that distribution was to be made 'in accordance with such methods of distribution as may be adopted by the Government of the United States.'
 
 
 3
 Congress passed the International Claims Settlement Act of 1949[2] to implement the executive agreement just described and any similar agreements which might later be negotiated. The Act set up the International Claims Commission[3] and gave it jurisdiction to make 'final decisions with respect to claims' against the Fund. 22 U.S.C.A. § 1623(a). Such decisions were to 'constitute a full and final disposition' of each claim considered. 22 U.S.C.A. § 1623(b). The Act then went on to say in Section 4(h) that the 'action of the Commission in allowing or denying any claim under this subchapter shall be final and conclusive on all questions of law and fact and not subject to review by the Secretary of State or any other official, department, agency, or establishment of the United States or by any court by mandamus or otherwise.' 22 U.S.C.A. § 1623(h).
 
 
 4
 Mrs. de Vegvar, as one of those who filed a claim against the Fund, was given a hearing by the Commission. Most of the evidence she presented was admitted, but the Commission excluded certain proffered evidence relating to the laws of Yugoslavia. The Commission later rendered its Final Decision, holding that plaintiff's property had been taken by Yugoslavia on January 19, 1946, a date prior to the time when plaintiff became a naturalized citizen of the United States. One Commissioner dissented, on the ground that the Government of Yugoslavia had not obtained title to the property, under the laws of Yugoslavia, until November, 1947, by which time plaintiff had become an American citizen. Mrs. de Vegvar then brought this action in the District Court. A motion to dismiss was made by the defendants-appellees, and was granted by the Court. This appeal followed.
 
 
 5
 Appellant's main reliance is on Section 4(a) of the Act, which directs the Commission to 'apply the following in the following order: (1) The provisions of the applicable claims agreement as provided in this subsection; and (2) the applicable principles of international law, justice, and equity.' 22 U.S.C.A. § 1623(a). Appellant says that the Commission failed to examine and give effect to the Yugoslav statute relating to confiscation of property, and that this was a failure by the Commission to exercise [97 U.S.App.D.C. 128] the jurisdiction conferred on it by the Act. She further says that the refusal by the Commission to receive the evidence offered by her, to the effect that the decree of the Yugoslav court which purported to confiscate her property was null and void under the Constitution and laws of Yugoslavia, was a failure to apply the required standard of international law, and was an arbitrary act in excess of the jurisdiction of the Commission.
 
 
 6
 The Government's principal reliance is on the provisions of Section 4(h) of the Act, quoted above, precluding judicial review of the determinations of the Commission. The legislative history of that section shows that Congress intended this prohibition to be of broad scope and effect.[4] Congress knew that if each claimant could take his claim to the courts the Fund could not safely be distributed until every last litigation had been terminated. Considerations of both domestic and foreign policy called for the prompt distribution of the Fund and the ending of disputes between Yugoslavia and the United States.
 
 
 7
 No doubt the provisions of Section 4(h) do not bar certain types of judicial action. The Government brief, speaking of these provisions, says: 'There are no constitutional or other reasons for inferring any limitations thereon, and appellant has raised none.' And further: 'It is here assumed that, were this an area in which constitutional rights were or might be involved, Congress could not prevent the vindication of such rights in a judicial tribunal. Congress recognized, however, that no constitutional rights were involved in the distribution of the Yugoslav Claims Fund and that the nonreviewability provision could therefore be as broad as the situation required.' We may assume for purposes of argument that the provisions of Section 4(h) would probably not prevent judicial relief in the situation-- to illustrate-- where a claimant is denied consideration by reason of his race, creed or color. No violation of constitutional right is suggested here: plaintiff-appellant makes no contention, for example, that the United States has taken her property without paying for it. What happened was that Yugoslavia took plaintiff's property; the United States undertook to obtain moneys from Yugoslavia from which certain sorts of claims of United States nationals could be satisfied; a Commission was established to deal finally with such matters; plaintiff made a claim and was determined not to be in the class entitled to participate. Errors in the result reached, or errors in the admission of evidence or in the making of a legal ruling-- assuming such errors to have been made-- are not grounds for judicial intervention in the face of the congressional fiat that the Commission's determinations shall be free of judicial review. Plaintiff is barred by the statutory prohibition.
 
 
 8
 The Government also urges that, apart from the statute, the courts would deny judicial review of the matters complained of. The creation and distribution of the Fund, it says, were within the realm of foreign affairs: the citizen obtained only such status for his claim as his government succeeded in obtaining for him and decided to give him. The Government urges that such settlements of international claims-- absent clear congressional intent to the contrary-- give rise to no right of judicial review, citing Z. & F. Assets Realization Corporation v. Hull, 1941, 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288. We need not, for present purposes, pass on this contention.
 
 
 9
 For the reasons given, the judgment of the District Court dismissing the complaint will be affirmed. The injunctive order which this court entered pending the appeal will remain in force until our mandate is issued.[5] The mandate will [97 U.S.App.D.C. 129] be stayed for ten days to permit appellant to take such further steps as she may be advised.
 
 
 10
 So ordered.
 
 
 11
 WILBUR K. MILLER, Circuit Judge, dissents.
 
 
 
 [1]
 The Yugoslav Claims Agreement of 1948, 62 Stat. 2658, T.I.A.S. No. 1803
 
 
 [2]
 64 Stat. 13, 22 U.S.C.A. §§ 1622-1627
 
 
 [3]
 The functions and jurisdiction of that Commission were later transferred to the Foreign Claims Settlement Commission. Reorganization Plan No. 1 of 1954 effective July 1, 1954, 19 Fed.Reg.3985, 22 U.S.C.A. § 1622 note
 
 
 [4]
 See Congressman Ribicoff's statements at 95 Cong.Rec. 8840, 8854
 
 
 [5]
 We restrained the Secretary of the Treasury, pending final disposition of this appeal or until further order of the court, from making payments out of the Yugoslav Claims Fund which would reduce the total amount in such Fund to a sum less than $5,885,848.04