247 F.2d 95
 101 U.S.App.D.C. 104
 AMERICAN AND EUROPEAN AGENCIES, Inc., A New York
Corporation, Appellant,
v.
Whitney GILLILLAND, et al., constituting the Foreign Claims
Settlement Commission of the United States, and
George M. Humphrey, as Secretary of the
Treasury, Appellees.
 No. 13447.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 29, 1957.
Decided June 27, 1957, Writ of Certiorari Denied Nov. 25,
1957, See 78 S.Ct.152.
 
 Mr. James E. Hughes, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, with whom Mr. Percy A. Shay, Washington, D.C., was on the brief, for appellant.
 Mr. B. Jenkins Middleton, Atty., Dept. of Justice, with whom George Cochran Doub, Asst. Atty. Gen., Messrs. Oliver Gasch, U.S. Atty., and Samuel D. Slade, Atty., Dept. of Justice, were on the brief, for appellees.
 Mr. Lewis Carroll, Asst. U.S. Atty., also entered an appearance for appellees.
 Messrs. Philip Levy and Paul M. Rhodes, Washington, D.C., filed a brief on behalf of Steven Ausnit et al., as amici curiae urging affirmance.
 Before EDGERTON, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 The complaint in this case is essentially similar to that in de Vegvar v. Gilliland, 1955, 97 U.S.App.D.C. 126, 228 F.2d 640, certiorari denied 1956, 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859, and concludes with a prayer that the Foreign Claims Settlement Commission's award to the plaintiff (which was much smaller than desired) be set aside as 'null and void,' and the case be returned for further hearing. The District Court granted the Government's motion for summary judgment, on the authority of de Vegvar.
 
 
 2
 Plaintiff-appellant contends that it did not have the hearing referred to in Section 4(h) of the governing Act,[1] which provides in part:
 
 
 3
 'Any claimant whose claim is denied, or is approved for less than the full amount of such claim, shall be entitled, under such regulations as the Commission may prescribe, to a hearing before the Commission, or its duly authorized representative, with respect to such claim.'
 
 
 4
 Appellees urge that in fact appellant had an adequate hearing with respect to its claim, including the issue of the value of the claim, citing portions of the record before us in support of this contention. This is the sort of controversy which the courts are accustomed to decide. But here the very section appellant relies on also contains the following restriction on judicial reivew, which we considered and held controlling in de Vegvar:
 
 
 5
 'The action of the Commission in allowing or denying any claim under this Act shall be final and conclusive on all questions of law and fact and not subject to review by the Secretary of State or any other official, department, agency, or establishment of the United States or by any court by mandamus or otherwise.' Section 4(h).
 
 
 6
 Appellant, seeking to distinguish de Vegvar, urges that the broad bar to judicial review contained in the passage just quoted was not intended to be read literally, but was to be limited to Commission action taken pursuant to prescribed procedures and then only to questions relating to the merits of a claim. Such a construction is not supported by the legislative history. While it is true that one statement by the principal proponent of the bill in the House, Congressman Ribicoff, referred to non-reviewability as relating to 'the merits of claims,'[2] consideration of the entire legislative history plainly indicates that Congress did not intend to enact a mere partial barrier to review: the courts were told that they had no role to play when the Commission acted to allow or disallow a claim. As a matter of fact, it was the view of Congressman Ribicoff that the Constitution did not allow judicial review of such matters. He made it clear that 'The settlement of these claims is strictly within the executive branch of our Government,' and added his belief that 'three United States Commissioners would administer justice.'[3]
 
 
 7
 But appellant contends that we must modify the limitation on judicial review in Section 4(h) on the assumption that Congress would not establish procedures for an agency without authorizing the judiciary to enforce compliance. Appellant relies on the numerous cases where, in the absence of clear congressional directions to the contrary, the courts review agency action to insure compliance with prescribed procedures. E.g., Stark v. Wickard, 1944, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733. But the fact that the courts do so in proper cases when Congress has not legislated to the contrary affords no reason for watering down an express congressional statement that there shall not be review. The assumption that Congress must always contemplate judicial correction of erroneous agency action seems to have its basis in the view that Congress lacks other means to enforce its statutory mandates. But this is not so: Congress can, if it wishes, amend the law, allow a claim through a special bill, permit suit in the Court of Claims, or make a special appropriation; certainly it always has power to investigate and to impeach. When Congress tells the courts that there shall not be review, we will not assume, in the absence of something more, that Congress could not have meant what it said. Especially is this true in a case such as this where considerations of speed in the distribution of a fund provide a sound basis for Congress' choice of procedure.
 
 
 8
 The other contention urged to support a restrictive reading of Section 4(h) is essentially a constitutional argument: Congress may not prevent a court from requiring agency compliance with statutory procedures. If the agency's failure to follow prescribed procedures resulted in the denial of a constitutional right, the validity of a blanket non-reviewability clause would indeed pose a grave and difficult constitutional question.[4] On the other hand, if the agency's failure to follow prescribed procedures does not result in the denial of a constitutional right, there is no constitutional reason for seeking to narrow the scope of a non-reviewability statute.
 
 
 9
 In this case, appellant alleges that the Commission denied it the kind of hearing to which it was entitled under the Act. We will assume for present purposes that we have jurisdiction to consider whether the hearing afforded appellant was below the standard of due process of law. Appellant concedes that it was accorded a hearing in which it had opportunity to present its views and to offer evidence to support the merits and proper valuation of its claim. Its assertion is that the constitutional right to a hearing includes the right to know and meet the claims of the opposing party, citing Morgan v. United States, 1938, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129, and Ohio Bell Telephone Co. v. Public Utilities Commission, 1937, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, and that here it was not furnished a staff memorandum on which the Commission relied in making its determination of value. It says that the Commission should have accorded it a further hearing wherein it could offer evidence designed to rebut the conclusions of the memorandum. The cited cases established the requirements of a fair hearing in situations where a governmental agency was affirmatively acting to the detriment of the complaining party by fixing maximum rates (Morgan) or by lowering rates and ordering the complainant to make refunds (Ohio Bell Telephone). The Foreign Claims Settlement Commission is not engaged in that kind of task; rather it has the duty of distributing a governmentally created fund among a class. No claimant, including the appellant, has a right to participate in any amount unitl the Commission has made an award. In short, a benefit is being conferred, and while it is perhaps true that some minimal form of hearing is necessary even for the performance of such a governmental function, due process in these circumstances surely does not require more than an opportunity for the claimant to be heard. Appellant concedes it was accorded this much. On the showing here we are not required to decide whether Section 4(h) should be narrowly construed to permit review of the validity of a deprivation of a constitutional right.
 
 
 10
 We conclude, therefore, that the statutory bar, as interpreted in the Vegvar, supra, and in Dayton v. Gillilland, 1957, 100 U.S.App.D.C. 75, 242 F.2d 227, precludes us from granting the type of relief appellant now requests. See also Haas v. Humphrey, 1957, 100 U.S.App.D.C. 401, 246 F.2d 682. The Commission has taken final action allowing appellant's claim (though for a smaller amount than requested), and this is 'conclusive on all questions of law and fact' under Section 4(h). The question whether, in obtaining an award of a part of the governmentally created fund, appellant received the type of hearing provided by the statute is one of the 'questions of law' not subject to judicial review under the provisions of Section 4(h). It is essentially similar to the questions presented in de Vegvar, where the claimant said that the Commission had not obeyed the requirements of the governing statute in various procedural and substantive respects. See 97 U.S.A.pp.D.C. at page 127, 228 F.2d at page 641. Here, as in de Vegvar, the statute would be disregarded if we set aside the Commission's action and ordered reconsideration, whether we did so on the merits or to correct alleged procedural defects.
 
 
 11
 The judgment of the District Court will accordingly be
 
 
 12
 Affirmed.
 
 
 13
 WILBUR K. MILLER, Circuit Judge (dissenting).
 
 
 14
 The principal question presented here is this: when the Commission has denied to a claimant the hearing concerning his claim to which he is entitled by statute, may a court of competent jurisdiction require it to grant a hearing, or is such judicial coercion precluded by the statutory provision that the Commission's action in allowing or denying a claim shall not be subject to review by any court?
 
 
 15
 If the court has power to force compliance with the congressional command that a hearing be held before final administrative decision, another question may, and in this case would, arise: does the finality provision prevent the courts from deciding the preliminary issue raised by a claimant's contention that it was denied the hearing to which it was entitled under the statute, and the Commission's contention that a hearing was in fact afforded? In other words, the second question is whether the Commission's disputed conclusion that its procedure amounted to a hearing is immune from judicial scrutiny. These questions were not raised in de Vegvar v. Gillilland, 1955, 97 U.S.App.D.C. 126, 228 F.2d 640, and are before us for the first time.
 
 
 16
 My brothers of the majority do not reach the second question because they hold the statute forbids judicial correction of the Commission's refusal to grant a statutorily-required hearing, unless the refusal impinges on some constitutional right of the claimant. With respect to that, the majority do not perceive any constitutional issue. Thus their holding is that the agency here involved may disobey a clear congressional directive to grant a hearing, without being called to account by the courts; that it cannot be judicially required to act within the framework of its statutory authority. This seems to me to be dangerous doctrine and I cannot concur in it. It springs from an erroneous interpretation of the finality provision in the statute and from a mistaken conception of the relief which this appellant seeks, as discussion will demonstrate.
 
 
 17
 Section 4(h) of the Act provides that 'Any claimant whose claim is denied, or is approved for less than the full amount of such claim, shall be entitled * * * to a hearing * * * with respect to such claim.' It is not disputed that the appellant's claim was approved by the Commission for less than the full amount thereof. It was therefore clearly entitled to a hearing 'with respect to such claim.' But the majority say that, even if a hearing was denied as appellant contends it was, a court cannot compel the Commission to hold one because the statute also provides that 'The action of the Commission in allowing or denying any claim * * * shall be final and conclusive on all questions of law and fact and not subject to review * * * by any court * * *.' This is where I leave the majority, because I think, for reasons which will be made apparent, the provision just quoted should be read as though it included the words I insert in brackets: 'The action of the Commission (taken pursuant to prescribed procedures) in allowing or denying any claim * * * shall be final and conclusive on all questions of law and fact (as to the merits of the claim) and not subject to review * * * by any court * * *'
 
 
 18
 The first interpolation bracketed above is necessarily inherent in the provision because it would be perfectly idle for Congress to prescribe a procedure such as the holding of a hearing and then immediately to nullify the requirement by providing that the agency may disregard it with impunity. The second bracketed interpolation is proper for two reasons. First, it will be observed that every action of the Commission is not exempted from judicial scrutiny, but only that which allows or denies a claim. Obviously this has reference to the merits of the claim. The words 'in allowing or denying any claim' define the kind of Commission action intended to be untouchable. The statutory provision does not say the Commission shall be exempt from judicial compulsion to grant the hearing ordered by its governing statute. There is no provision to the effect that courts may not correct Commission action taken in defiance of a legislative mandate by remanding for action in accordance therewith.
 
 
 19
 The second reason for my second interpolation in the quoted provision of the statute is found in the legislative history to which appellee and the majority draw attention. Both quote at length from a statement by Congressman Ribicoff, the chief proponent of the bill in the House, when he summarized the purpose of the finality provisions. But he also said, inter alia, 'Those provisions mean precisely what they say. The actions of the Commission insofar as they refer to the merits of claims will be final. They will not be subject to review by the courts of out judicial system.'
 
 
 20
 The appellee comments that this statement, when read out of context, 'might be seized upon as implying that Congressman Ribicoff considered the finality and nonreviewability clauses as covering only 'the merits of the claims' and not procedural matters * * *.' The Congressman did not merely imply but flatly stated that the finality provisions cover only the action of the Commission as to the merits of claims. There is nothing in the context to indicate he meant anything else. There was considerable discussion of the desirability of preventing litigation concerning the claims so that the final settlement of the fund would not be delayed. The nonreviewability provision accomplishes that, so long as the Commission acts within the authority conferred upon it. When the Commission acts without authority, as it did here, it is solely responsible for the delay caused by subsequent litigation concerning its right to do so.
 
 
 21
 The foregoing illuminates the error of the majority. Apparently they think the appellant seeks review of 'action of the Commission in allowing or denying any claim,' which the statute forbids. What the appellant really seeks is that the Commission be mandatorily enjoined to hold the hearing which the statute requires and which it has denied. It does not ask that we review the Commission's decision on the merits but merely that we require the Commission to conduct a hearing before making its own decision on the merits. To be sure, the appellant prays that the Commission's order be set aside, and that the case be remanded for a hearing before decision. That is the only way its right to a hearing can be vindicated, and that is all the appellant asks. It prays that the Commission 'be required to grant to the plaintiff a hearing on the issue of the value of said claim, and subsequent to such hearing be required to decide such claim in accordance with the provisions of the Act * * *.'
 
 
 22
 I am not concerned with the alleged absence of a constitutional question. The right to a hearing is a valuable right conferred by the statute and deprivation of it is per se prejudicial. I cannot agree that the Commission may with impunity nullify the legislative requirement that it grant a hearing. Members of the Congress which enacted this legislation will be surprised, I imagine, to learn from the majority opinion that the Commission cannot be compelled to grant the hearing which they ordered it to afford. I cannot believe it was the legislative intent in enacting this statute to immunize unlawful administrative action from correction by the courts. Nor do I believe that in any case, no matter how strongly it may word a provision for immunity from judicial review, Congress can prevent a court of competent jurisdiction from compelling an administrative agency to proceed as required by its governing statute. Nor is there any reason apparent to me why Congress should desire to do so, for in the absence of such judicial power there is no protection against administrative abuse such as occurred in this case, and a wrong can be perpetrated for which there is no remedy.
 
 
 23
 This brings me to the second of the two questions stated at the outset and which the majority think it unnecessary to consider: is the Commission's stoutly disputed decision that it did in fact grant a hearing open to judicial review? It must be; for if it is not, the Commission may refuse to grant a hearing and avoid judicial coercion to do so by simply stating that it regards its procedure as sufficient compliance with the statutory requirement. Its action in thus evaluating its own procedure is not within the letter or the spirit of the provision for immunity from review. It is more important that the agency be required to toe the statutory mark than it is to avoid delay by letting its denial of the right to a hearing go unchallenged.
 
 
 24
 In this case I think it clear that the Commission denied to the appellant the hearing to which Congress said it is entitled, but, in view of the majority decision, detailed discussion of the reasons for my conclusion would be pointless. I would set aside the District Court's judgment and remand the case for entry of an order requiring the Commission to conduct a hearing before reaching a decision on the merits.
 
 
 
 [1]
 International Claims Settlement Act of 1949, 64 Stat. 13, 22 U.S.C.A. 1622-27
 
 
 [2]
 95 Cong.Rec. 8840 (1949)
 
 
 [3]
 95 Cong.Rec. 8854 (1949)
 
 
 [4]
 Compare Ex Parte McCardle, 1868, 7 Wall. 506, 74 U.S. 506, 19 L.Ed. 264, with Martin v. Hunter's Lessee, 1816, 1 Wheat. 304, 328-329, 14 U.S. 304, 328-329, 4 L.Ed. 97; and see Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts, 66 Harv.L.Rev. 1362 (1953). It may well be that if the denial of a constitutional right were persuasively alleged, the courts would seek a construction of the non-reviewability statute which would allow review of such questions, thereby obviating consideration of the more fundamental constitutional question. In de Vegvar, we assumed for purposes of argument that Section 4(h) would not bar review of assertions that equal protection of the laws had been denied