**Frederick FRAENKEL, Plaintiff,**

**v.**

**The UNITED STATES of America, and David M. Kennedy, Secretary of the Treasury, and Leonard von B. Sutton, Theodore Jaffe and Sidney Freidberg, comprising together the Foreign Claim Settlement Commission of the United States of America, Defendants.**

**No. 70 Civ. 1390.**

United States District Court,
S. D. New York.

Sept. 8, 1970.

Brashich & Finley, New York City, for plaintiff; Deyan Ranko Brashich, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for the United States; Richard S. Toder, Asst. U. S. Atty., of counsel.

MANSFIELD, District Judge.

In this action by a claimant attacking the constitutionality of a provision of the War Claims Act of 1948, as amended, 50 U.S.C.App. § 2010, which bars judicial review of decisions of the Foreign Claims Settlement Commission, and seeking an order compelling the Commission to revoke the decision denying plaintiff's claim, defendants have moved to dismiss the complaint for lack of jurisdiction. For the reasons stated below, the motion is granted.

Section 202 of the Act, 50 U.S.C.App. § 2017a, directs the Commission to determine the validity and amount of claims by U. S. nationals for loss, destruction or physical damage to their property located in Austria during the period from September 1, 1939 to May 8, 1945, as a consequence of military operations, seizure or nationalization. Payments on account of claims thus determined to be valid are authorized to be made out of the War Claims Fund, which consists of enemy assets frozen under the Trading with the Enemy Act, 50 U.S.C.App. § 2012. With a view to requiring that all claims be adjudicated within a reasonable period so that the Fund could be distributed on a pro-rata basis to claimants, Congress prohibited judicial review of the Commission's decisions and in 1962 directed the Commission to complete its adjudication of all claims within four years. 50 U.S.C. App. § 2010 provides in pertinent part as follows:

"The action of the Commission in allowing or denying any claim under this title * * * shall be final and con-

clusive on all questions of law and fact and not subject to review by any other official of the United States or by any court by mandamus or otherwise, * * * * ".

H.R. No. 2035 explained the reason for the foregoing provision:

"This section also provides that the action of the Commission in allowing or denying any claim should be final and conclusive on all questions of law and fact and not subject to review by any other official of the United States or by any court.

*"It is deemed essential that this finality clause be applicable with respect to the claims program authorized in proposed title II. In the absence of such a provision the program could not be completed within the 5-year limitation period and the funds available for payment of claims could be seriously jeopardized."* (Emphasis supplied) U.S. Code Congressional & Administrative News (87th Congress, 2d Sess. 1962) pp. 3826, 3834 (July 25, 1962) (hereinafter "House Report").

Along the same lines 50 U.S.C. App. § 2017j provides:

"The Commission shall complete its affairs in connection with the settlement of claims pursuant to this title [sections 2017–2017p of this Appendix] not later than four years following the enactment of legislation making appropriations to the Commission for payment of administrative expenses incurred in carrying out its functions under this title."

Thus the mandate of the Commission expired four years later, on May 17, 1967.

Pursuant to the above cited laws and regulations issued thereunder plaintiff filed two claims with the Commission each asserting ownership of property lost or destroyed in Austria or Hungary partly as the result of Soviet confiscation. One of the items, denial of which leads to the present lawsuit, was a claim for 105 railroad carloads of paper, each carload amounting to 10 metric tons. After receiving and considering evidence

in support of the claim, the Commission on March 1, 1967, issued a Proposed Decision reviewing the proof and denying the claim. It found as follows:

"With respect to the above portions of the claim for the damage to factory known as Friedheim and Son and the loss of the additional carloads of paper goods at the same factory, the Commission finds that the claimant has not sustained the burden of proof with respect to the issues of date of loss or damage, ownership and value. Neither has there been a showing that the losses, if any, occurred between August 5, 1943, the date on which claimant acquired United States nationality, and May 8, 1945, the terminal date of the statutory period. Accordingly, these portions of the claims are denied."

Plaintiff thereupon filed objections and on April 18, 1967, a hearing was held by the Commission at which plaintiff submitted additional evidence. On May 17, 1967, the Commission filed its Final Decision granting plaintiff's claim in part but denying that part based on the claimed loss of 105 carloads of paper allegedly owned by plaintiff.

On May 15, 1970, three years after the Commission's Final Decision, plaintiff commenced the present action by filing a complaint incorporating the Commission's decision in his case as well as decisions with respect to another claim, Elsa S. Krewer and Herbert Silberstein, No. W–9809, dated November 17, 1966, and demanding an order directing the Commission to revoke its decision denying his claim and declaring unconstitutional the above-quoted section of the Act which prohibits judicial review of the Commission's decisions.

■ In his brief plaintiff contended that the "no review" statute violates his Fourteenth Amendment rights for the reason that it has had the effect of taking away his property without procedural due process. Upon argument his counsel withdrew this contention. We need not dwell at length upon the contention, therefore, except to note (as apparently did his counsel) that the same claim has been repeatedly and uniformly rejected as baseless by many courts. Nebenzal v. Re, 132 U.S.App.D.C. 254, 407 F.2d 717 (1968), cert. denied, 395 U.S. 920, 89 S. Ct. 1771, 23 L.Ed.2d 237 (1969); First National City Bank of New York v. Gillilland, 103 U.S.App.D.C. 219, 257 F.2d 223, cert. denied, 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73 (1958); Zutich v. Gillilland, 254 F.2d 464 (6th Cir. 1958); American and European Agencies, Inc. v. Gillilland, 101 U.S.App.D.C. 104, 247 F.2d 95, cert. denied, 355 U.S. 884, 78 S.Ct. 152, 2 L.Ed.2d 114 (1957); Haas v. Humphrey, 100 U.S.App.D.C. 401, 246 F.2d 682 (1957), cert. denied, 355 U.S. 854, 78 S.Ct. 83, 2 L.Ed.2d 63 (1957); Dayton v. Gillilland, 100 U.S.App.D.C. 75, 242 F.2d 227, cert. denied, 355 U.S. 813, 78 S.Ct. 13, 2 L.Ed.2d 31 (1957); De Vegvar v. Gillilland, 97 U.S.App.D.C. 126, 228 F.2d 640 (1955), cert. denied, 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859 (1956).

For one thing plaintiff has no standing to assert a claim of denial of due process because he had no proprietary interest in the frozen enemy assets constituting the War Claims Fund, which is the source of payment of awards upon claims that have been proven. Cummings v. Deutsche Bank, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545 (1937); Illinois Central Railroad Co. v. Rogers, 102 U.S.App.D.C. 327, 253 F.2d 349 (1958); First National City Bank of New York v. Gillilland, 103 U.S.App.D.C. 219, 257 F.2d 223, cert. denied, 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73 (1958). Nor does plaintiff have any vested property rights or other right to payment of claims upon presentation to the Commission. Section 7(f) of the International Claims Settlement Act of 1949, 22 U.S.C. § 1626(f), which is expressly made applicable to claims under the War Claims Act of 1948, provides that nothing in the law shall be construed as an assumption of any liability by the United States for payment or satisfaction in whole or in part of any claim asserted by a U.S. national against a foreign government. The Committee

on Interstate Foreign Commerce of the House of Representatives expressed the reasoning behind the statutory provision as follows:

"It should be borne in mind that no vested property rights are involved in the determinations of the Commission in any claim filed under proposed title II. Such rights as may be created would be purely statutory in nature. Payments on awards would be clearly gratuities." House Report pp. 3834–3835.

█ In such circumstances the Due Process Clause assures a claimant of nothing more than the right to present evidence and to be heard, all of which has been accorded to plaintiff here. American and European Agencies, Inc. v. Gillilland, 101 U.S.App.D.C. 104, 247 F. 2d 95, cert. denied, 355 U.S. 884, 78 S. Ct. 152, 2 L.Ed.2d 114 (1957). Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), both of which dealt with clear violations of a United States statute, have no application here where no such claim is made.

█ Turning to plaintiff's second contention, which is that the "no review" statute has operated in violation of plaintiff's Equal Protection Rights, the argument is based wholly on plaintiff's claim that the Commission made an award upon an "identical claim" asserted by Elsa S. Krewer and Herbert Silberstein. An examination of the Commission's proposed decision in the Krewer case reveals, however, that upon its appraisal of the evidence before it in that case the Commission found that the inventory there was owned by the claimants, that it was seized within the statutory period and that the value had been proved by the claimants. In Fraenkel's case, however, the Commission denied the claim on the ground that the claimant had failed to sustain its burden of establishing each of these essential elements. In short, as the Commission decisions attached to the complaint reveal, the proof offered with respect to each of these two different claims was admittedly different, as it necessarily had to be, since one claim dealt with 105 carloads of paper allegedly seized in Austria and the other dealt with real and personal property allegedly seized in Poland at a different time. The Commission's decision in each case, therefore, turned on the credibility and weight extended by it to proof which differed in each case. Thus it is clear beyond any doubt that the "identical claim" argument does not present a question of denial of equal protection or rise to a constitutional level. This is not a case where the Commission simultaneously applied a different standard, principle or rule in the two cases, such as denying one claim because the claimant was a black person and granting the other because the claimant was of a different race. See, e. g., De Vegvar v. Gillilland, 97 U.S.App.D.C. 126, 228 F.2d 640 at 642 (1955), cert. denied, 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859 (1956).

█ Even if the Commission had changed a standard or rule previously applied by it, it is questionable whether an equal protection issue would arise in the absence of an allegation that its action with respect to plaintiff's claim represented a departure from a standard applied in other cases. An administrative agency is not barred from changing its rules or overruling prior decisions, provided the new rule is applied equally to those governed by it. Federal Communications Commission v. Station WOKO, Inc., 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946); Sunray Oil Co. v. Comm'r of Internal Revenue, 147 F.2d 962 (10th Cir. 1945); State Airlines v. CAB, 84 U.S.App.D.C. 374, 174 F.2d 510, 518 (1949), reversed in part on other grounds, 338 U.S. 572, 70 S.Ct. 379, 94 L.Ed. 353 (1950). Lastly we note that since the statutory powers of the Commission have expired, it would be without power to implement the relief demanded by plaintiff.

Since the plaintiff fails to state a claim for relief, it is dismissed.

It is so ordered.