Benjamin F. BROCKWAY, on his own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Vincent L. TOFANY, in his capacity as Commissioner of the Department of Motor Vehicles of the State of New York, Defendant.

No. 70 Civ. 3267.

United States District Court, S. D. New York,

Oct. 5, 1970.

The Legal Aid Society of Westchester County, White Plains, N. Y., for plaintiffs; Martin A. Schwartz, White Plains, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for defendant; Charles A. LaTorella, Jr., Asst. Atty. Gen., of counsel.

MANSFIELD, District Judge.

In this action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), plaintiff moves to convene a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284 to weigh the constitutionality of N.Y. Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 510(6), and for declaratory and injunctive relief and damages. Defendant, in turn, has moved to dismiss the action. Under §

510(6),[1] the Commissioner of Motor Vehicles ("Commissioner" herein) is permitted to prolong the revocation of driver's and chauffeur's licenses beyond a mandatory period of six months, by denying license applications submitted by individuals whose licenses have been mandatorily revoked. Although there is no provision in the statute itself for notice to the applicant and an opportunity to be heard, the practice of the New York Department of Motor Vehicles is to accord hearings to such applicants under conditions more fully described below. Plaintiff contends that the statute violates his constitutional right to due process of law under the Fourteenth Amendment. For reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

On March 26, 1968, Brockway pleaded guilty to and was convicted of the charge of driving while intoxicated in violation of § 1192(2) of the N.Y. Vehicle and Traffic Law. He was sentenced to a fine of $50, and his chauffeur's license to operate a motor vehicle in New York State was mandatorily revoked pursuant to § 510(2) of the Vehicle and Traffic Law.[2] Under § 510(6), this revocation was to continue for a minimum of six months. Section 510(6) provides that after six months a new license might be granted in the discretion of the Commissioner.

After the mandatory six-month period had expired, Brockway applied for a new chauffeur's license. His application was denied in early December, 1968, "after a review of [his] entire record, involving a history of drinking and three convictions of driving while intoxicated." Brockway was informed that he might reapply six months later. On August 19, 1969, Brockway's second application was denied on the grounds on which the denial of his first application had been based.

On October 2, 1969, Brockway wrote the Commissioner through an attorney requesting either "restoration of [his] chauffeur's license or, in the alternative, a full administrative hearing to determine whether the continued refusal to restore [his] chauffeur's license was warranted under all the facts and circumstances of the case." The Commissioner responded on October 20, 1969, stating that his decision to deny Brockway's application remained unchanged. Apparently after receiving the Commissioner's reply, Brockway's attorney again wrote the Commissioner, requesting for a second time a full administrative hearing. On November 21, 1969, the Commissioner replied that, although in his opinion such a hearing was not required by the Vehicle and Traffic Law or by the Constitution, a hearing would be scheduled if Brockway desired one.

---

1. N.Y. Vehicle and Traffic Law § 510(6):
    "6. Restrictions. Where revocation is mandatory hereunder, no new license shall be issued for at least six months or, in certain cases, a longer period as specified in this chapter, after such revocation, nor thereafter, except in the discretion of the commissioner of motor vehicles, and such commissioner shall not issue a new license, nor restore the old, in any event, where a person has been twice convicted of driving a motor vehicle or motorcycle while intoxicated or while his ability to operate such motor vehicle is impaired by the use of a drug as defined in this chapter where personal injury has resulted from such driving while intoxicated or where such driving has been impaired by the use of a drug as defined in this chapter in each instance. * * *"

2. N.Y. Vehicle and traffic Law § 510(2):
    "2. Mandatory revocations and suspensions. a. Mandatory revocations. Such licenses shall be revoked and such certificates of registration may also be revoked where the holder is convicted:
    * * * * *
    "(iii) of any violation of subdivisions two or four of section eleven hundred ninety-two, section six hundred or section three hundred ninety-two or of a local law or ordinance making it unlawful to operate a motor vehicle or motorcycle while in an intoxicated condition, or to leave the scene of an accident without reporting, or an offense consisting of operating a motor vehicle or motorcycle while under the influence of intoxicating liquor where the conviction was had outside this state; * * *."

Subsequently, Brockway was informed that no further consideration could be given to his former application, as "an application once denied cannot be reconsidered," but that he would be required to file an application *de novo* to obtain the proferred hearing and any other further consideration of his case.

On January 23, 1970, Brockway commenced an action in this court, Brockway v. Tofany, 310 F.Supp. 266 (S.D.N.Y.1970), alleging the above facts, claiming a violation of his Due Process rights, and requesting declaratory and injunctive relief and damages. Identical claims and requests are made in the present case. In support of defendant's motion to dismiss the original action, affidavits were submitted specifying the records on which the Commissioner had based his decision and describing in some detail the hearing procedure which the Commissioner had offered Brockway.

The undisputed record thus furnished discloses a firm factual basis for the Commissioner's action in denying Brockway's applications. Although Brockway's two prior convictions for driving while intoxicated occurred more than 20 years ago, his record also reveals two somewhat more recent convictions for public intoxication, three instances in which he obtained a license irregularly by not revealing, when required, current revocations and suspensions of prior licenses, three convictions for driving while his license was under suspension or revocation, and four convictions for various moving violations between January 22, 1965, and August 15, 1967. In addition, the Commissioner's records contain a notarized stipulation which Brockway filed at the Commissioner's request in 1957. In that year the Commissioner lifted Brockway's second mandatory revocation for driving while intoxicated upon Brockway's stipulation that, should his license again be revoked as a result of conviction for driving while intoxicated, he would not reapply for a license until five years after the

commencement of the revocation. Upon this record denial of Brockway's license applications in 1968 and 1969 appears to have been *prima facie* a valid exercise of the Commissioner's discretion. Cf. Application of Frazzita, Sup., 147 N.Y.S.2d 11 (1955).

On March 19, 1970, Judge Pollack ruled that Brockway's complaint did not state a claim cognizable under the Civil Rights Act, 42 U.S.C. § 1983, in that the Commissioner had "unequivocally" told Brockway that an administrative hearing would be provided him, 310 F.Supp. 267, and consequently the requirement of Eisen v. Eastman, 421 F.2d 560 (2d Cir.1969), that state administrative remedies be exhausted before § 1983 jurisdiction might properly be invoked, had not been met. It is clear that the administrative hearing to which Judge Pollack referred was the "informal hearing" or "personal interview" (more fully described below) which had been offered to Brockway in the Commissioner's letter of November 21, 1969. Accordingly, the complaint was dismissed, but "without prejudice to the filing of a new action in the event that the Commissioner fails to afford a hearing to the plaintiff." 310 F.Supp. at 267. Thus Judge Pollack decided that the action would stand dismissed if an informal administrative hearing should be accorded to Brockway and that he would be permitted to commence a new action only if such a hearing was not to be granted.

On July 8, 1970, following Judge Pollack's decision, a hearing was granted to Brockway, and there is no contention that it did not conform to the concept of a hearing as specified by Judge Pollack or to the offer of a hearing that was outstanding when the original action was dismissed. Since the requirement specified by Judge Pollack for reinstitution of the action has not been met, his decision would call for dismissal of the present suit. Viewed technically, of course, the present action may not fulfill the "same case" requirement for the application of "law of the case," Fidelity & Deposit Co. of Maryland v. Port of Seat-

tle, 106 F.2d 777 (9th Cir.1939), cert denied, 309 U.S. 661, 60 S.Ct. 515, 84 L.Ed. 1009 (1940). However, since the issues have once been litigated, and "law of the case" is a doctrine of practicality which may be applied by us in our discretion, Dictograph Products Company v. Sonotone Corp., 230 F.2d 131 (2d Cir.1956), we defer to Judge Pollack's opinion in the original Brockway v. Tofany action, where the same parties litigated the identical issues.

■ Even if we were not inclined to follow Judge Pollack's decision, we would be disposed to dismiss the new action as meritless since the hearing accorded to Brockway met procedural due process requirements and there is no indication that a similar hearing would not be granted to any other members of the purported class similarly situated. In fact, we are not furnished with any basis for believing that there *are* other persons similarly situated. It therefore appears that on the undisputed record no substantial constitutional question is presented warranting the convening of a three-judge court, and no basis exists for the other relief demanded.

■ In determining whether minimum procedural safeguards required by due process have been afforded to an applicant for a driver's license, we are guided by the oft-quoted principle proclaimed by the Supreme Court in Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), that due process does not demand "inflexible procedures universally applicable to every imaginable situation," but must be resolved after a balancing of the governmental function involved against the substance of the private interest affected. See Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Hannah v. Larche, 363 U.S. 420, 440, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Escalera v. New York City Housing Authority, 425 F.2d 853, 861 (2d Cir.1970). Where national security is involved, for instance, as in the training of cadets as future military personnel, disciplinary hearings may be rudimentary and informal in character. Wasson v. Trowbridge, 382 F.2d 807 (2d Cir.1967). In the present case the essential interest of the State of New York, of course, is to protect its citizens by minimizing the number of accidents caused by drunken or reckless drivers, while that of Brockway is to regain his license so that he may seek work as a chauffeur.

The procedure followed by the New York Department of Motor Vehicles in the processing and disposing of applications for drivers' licenses by persons whose licenses have previously been revoked is described in detail in the affidavit of Reubin Schriro, head clerk of the Department's New York central office and a member of the Review Board designated by the Commissioner of Motor Vehicles. A motorist whose driver's license has been mandatorily revoked pursuant to § 510 of the Vehicle & Traffic Law (as was Brockway's license) may, after a six-month waiting period, file an application for a new license which is referred to the Department's Review Unit. If his record indicates nothing other than the violation which resulted in the revocation of his license, his application is routinely approved. If, on the other hand, the Department's records reveal other information such as multiple revocations or suspensions, a record of accidents, poor driving record, other violations, or similar detrimental information, the applicant is advised that his application is being considered and is requested to furnish additional information with respect to his ownership of a motor vehicle, employment and drinking habits. The Department then obtains a copy of the applicant's criminal record and also writes to the local police where he resides for any information they may have with respect to the applicant. Further information may be obtained through a field investigation by an inspector who personally commu-

nicates with local police, neighbors, employer, family and the applicant himself.

After all replies and reports are received, the application is considered by the Review Unit in the light of the information thus furnished. If the information indicates that the applicant would constitute a danger to the life, limb or property of persons on the highways, he is notified in writing of the denial of his application, with a brief statement of the reason for the denial. If the Review Unit, after considering the information thus obtained, remains in doubt as to whether the application should be approved or denied, or if there are conflicting statements or information in the file, the applicant is called in for a personal interview or informal hearing with the Review Board. Similarly it appears that where an application has been denied, the Department, although taking the position that it has no statutory obligation to do so, will upon the applicant's request arrange for a hearing before its Review Board, as was done in Brockway's case. The procedure upon such an informal hearing is described by Mr. Schriro as follows:

"His [applicant's] record is discussed with him. He is given an opportunity to deny any information or report, explain anything he wishes, amplify statements previously submitted in writing, state any extenuating circumstances and give his reasons why he should receive favorable consideration. He may appear at the interview with an attorney, may produce witnesses, and may submit letters of recommendation or anything else he considers material and in his favor. The Review Board at any interview consists of not less than three members of the Department of Motor Vehicles designated by the Commissioner and may number four or five members. After the interview, the applicant is sent out of the hearing room while the Review Board deliberates. When the Review Board has reached a determination, the applicant is recalled and is informed of the decision, which is later confirmed in writing by a letter to the applicant from the Review Unit in Albany. Every determination of the Review Board is subject to review by the Commissioner of Motor Vehicles, who may, of course, modify or reverse the decision of the Review Board. The action of the Commissioner in denying an application for a license is reviewable by the Supreme Court of the State of New York in a proceeding in the nature of a Writ of Certiorari, as provided in Article 78 of the Civil Practice Law and Rules of the State of New York."

It further appears that the applicant is given access to the information available to and relied upon by the Review Board.

The foregoing procedure was followed in Brockway's case after he filed a new application for a license. At the hearing held on July 8, 1970, by the five-man Review Board he was represented by counsel, was heard and introduced evidence. He testified, for instance, that he had stopped drinking alcoholic beverages and had not been operating a motor vehicle. He denied that the October 19, 1967, accident, which resulted in the conviction for driving while intoxicated and led to revocation of his license, had caused any injuries. On the other hand, the Board had his extensive record before it, including the fact that he had obtained a duplicate license on August 4, 1967, without revealing that earlier in the same year his license had been suspended pending trial of a charge against him of driving under the influence of alcohol, and that his license had been suspended on September 29, 1967, after a conviction on May 31, 1967, in New Rochelle for driving while his ability was impaired by alcohol. In addition the record revealed to the Board that the October 19, 1967, accident had resulted in injuries both to Brockway and to the driver of the other car. After weighing this evidence the Review Board disapproved Brockway's application, pointing out that "in view of applicant's record,

sufficient time has not yet elapsed to support applicant's claim that he has developed a sound sense of responsibility and a proper respect for the law."

■ The procedure as thus applied strikes us as clearly satisfying procedural due process requirements. Brockway was advised in writing of the basis of the Department's action. He was accorded an opportunity to be heard by the Review Board, to be represented by counsel, to examine the evidence forming the basis of the Department's action, to present additional evidence, to cross-examine witnesses relied upon by the Department, to appeal from an adverse decision of the Commissioner of Motor Vehicles and to obtain state judicial review through an Article 78 proceeding.

We are not here dealing with a situation where the applicant is unaware of the basis for the Department's disapproval of his application, or where he is refused access to basic information in his file, or where he is denied the opportunity to confront and cross-examine those furnishing information relied upon by the administrative body, which was the basis of the decision in Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir.1970), a case heavily —and in our view erroneously—relied upon by Brockway. Although the Board did not provide some of the more elaborate features now demanded by him, such as a transcript of the record, we believe that the state's interest in keeping its highways safe so outweighs his interest in obtaining a license that the procedure is adequate and beyond constitutional attack. Furthermore, while we recognize that exhaustion of state judicial remedies is not required as a condition to seeking relief here, Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the availability of judicial review by way of an Article 78 proceeding in the New York state courts is a factor which we are entitled to consider in determining whether due process exists. Although such a proceeding has disadvantages as a method of reviewing certain types of state administrative procedures, see Escalera v. New York City Housing Authority, supra, 425 F.2d at 865–866, it has proven an effective remedy in obtaining redress in disputes like the one in the present case, see, e. g., Matter of Wignall v. Fletcher, 278 App. Div. 28, 103 N.Y.S.2d 7 (1951), aff'd, 303 N.Y. 435, 103 N.E.2d 728 (1952); English v. Tofany, 32 A.D.2d 878, 302 N.Y.S.2d 221 (1969); Application of Frazzita, Sup., 147 N.Y.S.2d 11 (1955), not only to test the validity of the Commissioner's decisions within the statutory structure, Ackerman v. Dept. of Motor Vehicles, 58 Misc.2d 21, 294 N.Y.S. 2d 286 (1968), but to raise precisely the kind of constitutional challenge presented in this action, Cadieux v. MacDuff, 1 A. D.2d 360, 150 N.Y.S.2d 138, appeal dismissed, 1 N.Y.2d 827, 153 N.Y.S.2d 209, 135 N.E.2d 717 (1956).

■ Finally, we reject Brockway's contention that the statute must be held unconstitutional because on its face no hearing is provided. Due process in this case does not require that the hearing procedure be established by statute, cf. Hannah v. Larche, 363 U.S. 420, 454–485, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Wasson v. Trowbridge, 382 F. 2d 807, 810 (2d Cir.1967). It is satisfied by administrative practice under the statute, which provides the applicant with notice and an opportunity to be heard, American and European Agencies, Inc. v. Gillilland, 101 U.S.App.D.C. 104, 247 F.2d 95, cert. denied, 355 U.S. 884, 78 S.Ct. 152, 2 L.Ed.2d 114 (1957). The Commissioner of Motor Vehicles is authorized to establish the rules, regulations, and practices of his department, N.Y. Vehicle and Traffic Law § 215, and in the absence of any indication that a hearing like the one Brockway received would be denied to persons similarly situated in the future, we cannot say that the requirements of due process have not been met.

 Nor are we here faced with a situation where a hearing, to constitute effective due process, must necessarily precede any action by the administrative body involved for the reason that an initial adverse decision or adjudication will cause immediate or irreparable loss or injury to the applicant or will be difficult or impossible to rescind as a practical matter. See, e. g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits); Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961) (expulsion from college); Powelton Civic Home Own. Assn. v. Dept. of HUD, 284 F.Supp. 809 (E.D.Pa.1968) (massive disbursement and expenditure of public funds). Here Brockway's license had already been validly and mandatorily revoked for at least six months in the interest of protecting the public. Even in those instances where the Review Board thereafter may initially disapprove an application for a new license before the applicant is heard, its action is neither final nor irrevocable. Upon his request a hearing was promptly offered to Brockway. There is no showing that he has been prejudiced, since he was accorded a full hearing and the initial decision was reaffirmed on the basis of adequate and fairly compelling evidence.[3]

In conclusion we defer to Judge Pollack's earlier decision and we also find the action to be without merit. For these reasons the application for a three-judge court must be denied, California Water Service v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Green v. Board of Elections, 380 F.2d 445 (2d Cir.1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968); Utica Mutual Insurance Company v. Vincent, 375 F.2d

129 (2d Cir.), cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967), and the complaint must be dismissed.

It is so ordered.

---

3. In the absence of intervention by some other member or members of the purported class claiming denial of due process as to them, Brockway's suit might well be dismissable for mootness. See Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). However, we need not decide the case upon that ground.